## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION<br>60 Massachusetts Avenue, N.E.<br>Washington, D.C. 20002<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES,<br>A DIVISION OF THE TEAMSTERS RAIL CONFERENCE,<br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS<br>20300 Civic Center Drive, Suite 320<br>Southfield, MI 48076-4169<br><br>BROTHERHOOD OF RAILROAD SIGNALMEN<br>917 Shenandoah Shores Road<br>Front Royal, VA 22630<br><br>NATIONAL CONFERENCE OF FIREMEN & OILERS, SEIU<br>1023 15th Street, NW, 10th Floor<br>Washington, DC 20005<br><br>AMERICAN TRAIN DISPATCHERS ASSOCIATION<br>1370 Ontario Street Suite 1040<br>Cleveland, Ohio 44113<br><br>PASSENGER RAIL LABOR BARGAINING COALITION<br>917 Shenandoah Shores Road<br>Front Royal, VA 22630<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>: Civil Action No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## <u>VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiff National Railroad Passenger Corporation, by its undersigned attorneys, alleges

as follows:

**Jurisdiction and Venue**

1.    This action for injunctive and declaratory relief arises under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 & 1337. Venue is proper in this judicial district under 28 U.S.C. § 1391(b).

**The Parties**

2.    The National Railroad Passenger Corporation (d/b/a "Amtrak") is a government-created corporation organized pursuant to 49 U.S.C. § 24101 et seq. and the laws of the District of Columbia. Amtrak's principal place of business is located at 60 Massachusetts Avenue, N.E., Washington, D.C. 20002. Amtrak operates extensively within this judicial district.

3.    Amtrak is a carrier engaged in railroad passenger service and is subject to the provisions of the RLA. Each year, Amtrak serves more than 24 million customers in 500 communities in 46 states. Today, Amtrak employs more than 18,500 people, approximately 16,000 of whom are represented by 14 unions and two labor councils. At present, there are 24 collective bargaining agreements in place between Amtrak and these labor organizations. These agreements are negotiated, supervised, and administered by Amtrak's office of Labor Relations.

4.    The Brotherhood of Maintenance of Way Employes, a division of the Teamsters Rail Conference, International Brotherhood of Teamsters ("BMWE") is a labor organization with its principal office at 20300 Civic Center Drive, Suite 320, Southfield, MI 48076-4169, and offices in this district at 25 Louisiana Ave., NW, 7th Floor, Washington, DC 20001.

5.    The BMWE is the certified representative under Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, of Amtrak employees within the craft or class of maintenance of way employees, encompassing a number of job classifications. As of August 2007 there were 1,545

2

individuals employed by Amtrak and represented by BMWE in the craft or class of maintenance of way employees.

6.     The Brotherhood of Railroad Signalmen ("BRS") is a labor organization with its principal office at 917 Shenandoah Shores Road, Front Royal, VA 22630 and offices in this district at 10 G Street, NE # 420, Washington, DC 20002.

7.     The BRS is the certified representative under Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, of Amtrak employees within the craft or class of signalmen, encompassing a number of job classifications.  As of August 2007 there were 540 individuals employed by Amtrak and represented by BRS in the craft or class of signalmen.

8.     The National Conference of Firemen & Oilers, SEIU ("NCF&O") is a labor organization with its principal office at 1023 15th Street, NW, 10th Floor Washington, DC 20005 and offices in this district at 1023 15th Street, NW, 10th Floor, Washington, DC 20005.

9.     The NCF&O is the certified representative under Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, of Amtrak employees within the craft or class of firemen and oilers.  As of August 2007 there were 245 individuals employed by Amtrak and represented by NCF&O in the craft or class of firemen and oilers, encompassing a number of job classifications.

10.     The American Train Dispatchers Association ("ATDA") is a labor organization with its principal office at 1370 Ontario Street Suite 1040, Cleveland, Ohio 44113.

11.     The ATDA is the certified representative under Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, of Amtrak employees within the craft or class of dispatcher.  As of August 2007 there were 154 individuals employed by Amtrak and represented by ATDA in the craft or class of train dispatcher, encompassing a number of job classifications.

12.    The Passenger Rail Labor Bargaining Coalition ("PRLBC") is an unincorporated association self-described as a "coalition" of BMWE, ATDA, NCF&O, and ATDA, organized pursuant to a "Passenger Rail Labor Bargaining Coalition Agreement" dated August 23, 2007, in Washington, D.C., and signed by representatives of BMWE, ATDA, NCF&O, and ATDA.  A copy of the "Passenger Rail Labor Bargaining Coalition Agreement" is appended as Exhibit A.

13.    Freddie N. Simpson, President, Brotherhood of Maintenance of Way Employes/IBT, signed the PRLBC Agreement on behalf of BMWE.

14.    W. Dan Pickett, President, Brotherhood of Railroad Signalmen, signed the PRLBC Agreement on behalf of BRS.

15.    George J. Francisco, Jr., President, International Conference of Firemen and Oilers, SEIU, signed the PRLBC Agreement on behalf of NFC&O.

16.    F.L. McCann, President, American Train Dispatchers Association, signed the PRLBC Agreement on behalf of ATDA.

### Collective Bargaining and Mediation with the Defendants

17.    The National Mediation Board ("NMB") is the federal agency established pursuant to Sections 4 and 5 of the RLA, 45 U.S.C. §§ 154, 155, with responsibility for administering the mediation procedures under the RLA.

18.    Amtrak and the BMWE are parties to two collective bargaining agreements ("Northeast Corridor" and "Off Corridor") entered into in 1997.  The Amtrak-BMWE collective bargaining agreements continue in effect but have been open for negotiation, pursuant to the procedures of Section 6 of the RLA, 45 U.S.C. § 156, since November 1, 1999.   The dispute between Amtrak and BMWE concerning new terms for the collective bargaining agreements remains unresolved.

19.     Amtrak and the BMWE were in mediation under the supervision of the NMB and pursuant to the procedures of Section 5 of the RLA, 45 U.S.C. § 155, from April 10, 2000 until October 18, 2007.  The NMB docketed the Amtrak-BMWE mediation case as A-13080 (BMWED).

20.     Until September 12, 2007, Amtrak and the BMWE had engaged in direct negotiations and mediation separately and without the involvement of any other labor organizations. A major issue in these negotiations between Amtrak and the BMWE has been Amtrak's proposal for changes in work rules that are specific to the work performed by BMWE employees.

21.     Amtrak and the BRS are parties to a collective bargaining agreement entered into in 1998.  The Amtrak-BRS collective bargaining agreement continues in effect but has been open for negotiation, pursuant to the procedures of Section 6 of the RLA, 45 U.S.C. § 156, since November 1, 1999.   The dispute between Amtrak and the BRS concerning new terms for the collective bargaining agreement remains unresolved.

22.     Amtrak and the BRS were in mediation under the supervision of the NMB and pursuant to the procedures of Section 5 of the RLA, 45 U.S.C. § 155, from August 15, 2001 until October 18, 2007. The NMB docketed the Amtrak-BRS mediation case as A-13185 (BRS).

23.     Until September 12, 2007, Amtrak and the BRS had engaged in direct negotiations and mediation separately and without the involvement of any other labor organizations.  A major issue in these negotiations between Amtrak and the BRS has been Amtrak's proposal for changes in work rules that are specific to the work performed by BRS employees.

24. Amtrak and the NCF&O are parties to a collective bargaining agreement entered into in 1999. The Amtrak- NCF&O collective bargaining agreement continues in effect but has been open for negotiation, pursuant to the procedures of Section 6 of the RLA, 45 U.S.C. § 156, since November 1, 1999. The dispute between Amtrak and the NCF&O concerning new terms for the collective bargaining agreement remains unresolved.

25. Amtrak and the NCF&O were in mediation under the supervision of the NMB and pursuant to the procedures of Section 5 of the RLA, 45 U.S.C. § 155, from May 19, 2005 until October 18, 2007. The NMB docketed the Amtrak-NCF&O mediation case as A-13370 (NCFO).

26. Until September 12, 2007, Amtrak and the NCF&O had engaged in direct negotiations and mediation separately and without the involvement of any other labor organizations. A major issue in these negotiations between Amtrak and the NCF&O has been Amtrak's proposal for changes in work rules that are specific to the work performed by NCF&O employees.

27. Amtrak and the ATDA are parties to a collective bargaining agreement entered into in 2000. The Amtrak-ATDA collective bargaining agreement continues in effect but has been open for negotiation, pursuant to the procedures of Section 6 of the RLA, 45 U.S.C. § 156, since November 1, 1999. The dispute between Amtrak and the ATDA concerning new terms for the collective bargaining agreement remains unresolved.

28. Amtrak and the ATDA were in mediation under the supervision of the NMB and pursuant to the procedures of Section 5 of the RLA, 45 U.S.C. § 155, from November 10, 2004 until October 18, 2007. The NMB docketed the Amtrak-ATDA mediation case as A-13340 (ATDA).

29.     Until September 12, 2007, Amtrak and the ATDA had engaged in direct negotiations and mediation separately and without the involvement of any other labor organizations. A major issue in these negotiations between Amtrak and the ATDA has been Amtrak's proposal for changes in work rules that are specific to the work performed by ATDA employees.

30.     Amtrak has collectively bargained on a separate basis with these and other labor organizations that represent Amtrak's employees since Amtrak began service pursuant to federal law in 1971.

31.     There is no history of Amtrak bargaining pursuant to the RLA with BMWE, BRS, NCF&O, and ATDA, or any subgroup of these four labor organizations, as members of a multi-union bargaining group.

### The Formation of the Passenger Rail Labor Bargaining Coalition

32.     BMWE, BRS, NCF&O, and ATDA organized the Passenger Rail Labor Bargaining Coalition on or about August 23, 2007.  On information and belief, BMWE, BRS, NCF&O, and ATDA invited other labor organizations that represent Amtrak employees to join the PRLBC, but the other organizations declined the invitation.

33.     On September 12, 2007, by means of a letter from Roland Wilder, Esq., counsel for PRLBC, to Harry S. Hoglander, Chairman of the NMB, the PRLBC gave notice to the NMB of the organization of the PRLBC.  A copy of the September 12, 2007 letter to Chairman Hoglander is appended as Exhibit B.  The September 12, 2007 Wilder to Hoglander letter advised of the intention of BMWE, BRS, NCF&O, and ATDA to negotiate jointly and to communicate a uniform bargaining position to Amtrak on common issues.  The September 12, 2007 Wilder to Hoglander letter requested that the NMB consolidate the separately-docketed

mediation cases for BMWE, BRS, NCF&O, and ATDA, collectively docket the disputes under a single docket number, and assign a mediator to the consolidated case.

34.     On September 12, 2007, by means of a letter from Roland Wilder, Esq., counsel for PRLBC, to Joseph Bress, Amtrak's Vice President – Labor Relations, the PRLBC gave notice to Amtrak of the creation of the PRLBC.  A copy of the September 12, 2007 letter to Mr. Bress is appended as Exhibit C.  The September 12, 2007 Wilder to Bress letter stated that the BMWE, BRS, NCF&O, and ATDA intended to bargain as a coalition.  The September 12, 2007 Wilder to Bress letter stated that Mr. Wilder had been designated as the representative for the coalition.  The September 12, 2007 Wilder to Bress letter included as an attachment a "Proposal by PRLBC to Resolve Current Contract Dispute on Amtrak."  A copy of the "Proposal by PRLBC to Resolve Current Contract Dispute on Amtrak" is appended as Exhibit D.

35.     On September 14, 2007, by means of a letter from Joseph Bress to Chairman Hoglander of NMB, with indicated copy to Roland Wilder, Amtrak advised the NMB and the PRLBC that Amtrak opposed the PRLBC's request for consolidated docketing as a single case and that Amtrak has not consented to multi-union bargaining with the four labor organizations as the PRLBC.  Amtrak further stated that it would deal with the PRLBC as the designated representative of each Defendant and that the labor organizations could coordinate their individual bargaining with Amtrak.  A copy of the September 14, 2007 Bress to Hoglander letter is appended as Exhibit E.

**The September 17, 2007 Mediation Session and Subsequent Correspondence**

36.     At the direction of the NMB, Amtrak representatives, including Mr. Bress, met at the NMB's offices on September 17, 2007, with Mediators Mr. Richard Hanusz, Mr. Ernest Dubester, and representatives from the BMWE, BRS, NCF&O, and ATDA.  Mediator Dubester

advised the parties that the NMB had not acted on the PRLBC's request for consolidation of the docketed cases involving BMWE, BRS, NCF&O, and ATDA. On behalf of Amtrak, Mr. Bress stated that Amtrak was preserving all rights to challenge the effort by BMWE, BRS, NCF&O, and ATDA to bargain jointly as a multi-union coalition. Mr. Bress stated that the coalition and joint bargaining would not be helpful in resolving Amtrak's work rule proposals, which are specific to each of the labor organizations. Mr. Wilder, on behalf of the PRLBC, presented the uniform economic proposal for BMWE, BRS, NCF&O, and ATDA that had been sent to the NMB and Amtrak on September 12, 2007.

37.    On October 11, 2007, by means of a letter from Thomas E. Reinert, Jr., counsel for Amtrak, to Chairman Hoglander of the NMB, with indicated copy to Roland Wilder, Amtrak advised the NMB and the PRLBC that Amtrak viewed the PRLBC Agreement as unlawful and as intended to prevent individual agreements between Amtrak and BMWE, BRS, NCF&O, and ATDA. Amtrak further stated that the NMB should not release the BMWE, BRS, NCF&O, and ATDA from mediation while those labor organizations were refusing to bargain on an individual union basis with Amtrak. A copy of the October 11, 2007 Reinert to Hoglander letter is appended as Exhibit F.

38.    On October 12, 2007, by means of a letter from Roland Wilder, Esq., counsel for PRLBC, to Chairman Hoglander of the NMB, the PRLBC denied that the PRLBC Agreement violates the RLA. A copy of the October 12, 2007 Wilder to Hoglander letter is appended as Exhibit G.

39.    The NMB did not consolidate the docketed cases involving BMWE, BRS, NCF&O, and ATDA

9

40.     By letters dated October 18, 2007, the NMB proffered arbitration to Amtrak and

each of the Defendant unions, as well as five other labor organizations not subject to this

litigation, in each of their individually docketed cases.  Copies of the NMB's October 18, 2007

letters to Amtrak and each of the Defendant unions are appended at Exhibit H.

41.     Each of the October 18, 2007 NMB letters sets October 25, 2005 as the response

date for the proffer of arbitration.  Pursuant to NMB practice, the NMB will likely set October 25

or 26, 2007 as the commencement date of the 30 day cooling off period pursuant to Section 5

First, 45 U.S.C. § 155 First.  At the end of the 30 day cooling off period, the parties will be free

to engage in self-help, including strikes, unless a Presidential Emergency Board is established

pursuant to the procedures of Section 10, 45 U.S.C. § 160.

## The Voting Provisions of the PRLBC Agreement

42.     BMWE, BRS, NCF&O, and ATDA have agreed in Section II.2 of the Passenger

Rail Labor Bargaining Coalition Agreement, entered on August 23, 2007, that:

> "Except as otherwise provided herein, all action of the Coalition, including decisions
> to expend Coalition funds, must be approved by a majority of the Coalition's
> affiliated organizations on both a one-vote-per-organization and an overall
> membership basis. For purposes of counting membership strength in overall
> membership voting determinations, each organization shall determine and report to
> the Chairman the total number of members it represents on the AMTRAK system as
> of the date of this Agreement and shall cast such membership vote as a bloc."

43.     BMWE, BRS, NCF&O, and ATDA have agreed in Section II.5 of the Passenger

Rail Labor Bargaining Coalition Agreement, entered on August 23, 2007, that:

> "By executing this Agreement and becoming an affiliate of the Coalition, each
> organization acknowledges that it has granted to the Coalition a power of attorney to
> act on the organization's behalf insofar as representing the organization in collective
> bargaining over the Section 6 notices and proposal mentioned above.  The power of
> attorney is not revocable for the duration of a bargaining round, as set forth in
> Paragraph III-3, without the express written consent of every other affiliate of the
> Coalition.  No affiliate shall conclude a separate agreement resolving common issues
> contained in Section 6 notices or proposals served or made by the Coalition and/or its

10

affiliates in bargaining with AMTRAK without the express written consent of every other affiliate of the Coalition."

44.    BMWE, BRS, NCF&O, and ATDA have agreed in Section III.3 of the Passenger Rail Labor Bargaining Coalition Agreement, entered on August 23, 2007, that:

> "No tentative agreement negotiated by the Coalition shall be submitted to the respective memberships of the Coalition's affiliates for ratification until the decision to initiate the ratification process is approved by a two-thirds majority of the Coalition's affiliated organizations on both a one-vote-per-organization basis and an overall membership basis, membership being determined in the same manner as in Paragraph II-2 above."

45.    BMWE, BRS, NCF&O, and ATDA have agreed in Section III.4 of the Passenger Rail Labor Bargaining Coalition Agreement, entered on August 23, 2007, that:

> "Once becoming affiliated with the Coalition by execution of this Agreement, or any addendum to it, organizations shall not withdraw from the Coalition without the express written consent of every other affiliate of the Coalition, until the affiliate's obligations terminate pursuant to Paragraph III-3."

46.    The intent and effect of the provisions quoted above in Paragraphs 42, 43, 44, and 45, is that BMWE, BRS, NCF&O, and ATDA have each disabled themselves from making a proposal to Amtrak, from entering into an agreement with Amtrak to change their respective collective bargaining agreements, or from ratifying an agreement with Amtrak without the consent of the three other labor organizations.

47.    Because of the relative size of the Amtrak membership of the organizations, and the fact that the BMWE has a larger Amtrak membership than the other three labor organizations combined, the intent and the effect of the provisions quoted above is that:  (a) the BMWE has veto power over all actions of the PRLBC; (b) the BMWE and any of the two other labor organizations can determine the policies and actions of PRLBC; (c) the BMWE and any of the two other labor organizations can preclude the remaining organization from making any bargaining proposal to Amtrak, entering into any agreement with Amtrak, or ratifying an

11

agreement with Amtrak, on any subject matter, including wages and benefits, contained in the PRLBC's proposals; and (d) the BMWE and any two other labor organizations can enter a tentative agreement with Amtrak and require that the remaining organization submit it to its membership for ratification.

48.    The intent and the effect of the provisions quoted above is to disable BMWE, BRS, NCF&O, and ATDA from bargaining individually with Amtrak over Amtrak's work rule proposals to each labor organization.

49.    The Defendant unions cannot lawfully exhaust the procedures of the RLA and become entitled to engage in lawful self-help until each of them abandons coalition bargaining, negotiates in the manner required by the Act, and uses its best efforts to reach individual agreements with Amtrak

50.    Amtrak will suffer irreparable harm if the Defendants continue to implement the PRLBC Agreement and insist on bargaining on a multi-union basis during the 30-day cooling off period, and then engage in a strike or other self-help that will result in an interruption of passenger rail service on Amtrak's system.

### First Cause of Action – Making an Agreement that Disables Bargaining in Violation of Section 2 First of the RLA

51.    Amtrak hereby re-alleges and incorporates by reference the allegations contained in the preceding numbered paragraphs 1-50 as if they were fully set forth in this paragraph.

52.    By their conduct in entering into the Passenger Rail Labor Bargaining Coalition Agreement, each Defendant has ceded to the PRLBC their individual authority and obligation to bargain and reach agreement on modifications to the terms of their individual collective bargaining agreements with Amtrak.

53.    By their conduct in entering into the Passenger Rail Labor Bargaining Coalition Agreement, each Defendant is effectively refusing to bargain with Amtrak concerning Amtrak's work rule proposals specific to each labor organization.

54.    Each Defendants' conduct constitutes a violation of their duty to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes" under Section 2 First of the RLA, 45 U.S.C. § 152 First.

### Second Cause of Action – Insistence on Multi-Union Bargaining in Violation of Section 2 First, Section 2 Second, Section 2 Seventh, and Section 6 of the RLA

55.    Amtrak hereby re-alleges and incorporates by reference the allegations contained in the preceding numbered paragraphs 1-54 as if they were fully set forth in this paragraph.

56.    There is no history of multi-union bargaining between Amtrak and BMWE, BRS, NCF&O, and ATDA.

57.    Amtrak has not consented to engage in multi-union bargaining with the Defendants as the Passenger Rail Labor Bargaining Coalition in these negotiations.

58.    By their conduct in entering into the Passenger Rail Labor Bargaining Coalition Agreement and insisting on negotiating with Amtrak as a multi-union coalition based on that Agreement, the Defendants are seeking to impose multi-union bargaining on Amtrak without any prior history of such bargaining on Amtrak and without Amtrak's consent.

59.    Bargaining on a multi-union bargaining basis with these four labor organizations would not facilitate agreement or provide efficiencies in bargaining because there are union-specific proposals at issue in these negotiations, including work rule proposals made by Amtrak.

60.    The Defendants' conduct constitutes a violation of their duty to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes" under Section 2 First of the RLA, 45 U.S.C. § 152 First; a

violation of Section 2 Second of the RLA, 45 U.S.C. § 152 Second; a violation of Section 2

Seventh of the RLA, 45 U.S.C. § 152 Seventh; and a violation of the status quo and procedures

for resolving such disputes under Section 6 of the RLA, 45 U.S.C. § 156.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.      Issue a declaratory judgment declaring that the Defendants have violated their

obligations under the Railway Labor Act by entering into the Passenger Rail Labor Bargaining

Coalition Agreement and insisting on engaging in multi-union bargaining without Amtrak's

consent.

2.      Issue a declaratory judgment that the Passenger Rail Labor Bargaining Coalition

Agreement is void.

3.      Issue an injunction to preclude the Defendants from implementing the Passenger

Rail Labor Bargaining Coalition Agreement or otherwise attempting to engage in multi-union

bargaining without Amtrak's consent.

4.      Issue an injunction enjoining each Defendant from refusing to bargain over

Amtrak's work rule proposals specific to each labor organization.

6.      Issue an injunction enjoining each Defendant from attempting to exhaust the

procedures of the Railway Labor Act and from engaging in self-help at the end of the 30-day

cooling off period under the Railway Labor Act.

7.      Issue an injunction directing each Defendant to return to individual, direct

negotiations with Amtrak on the Section 6 notices that remain unresolved between the parties.

8.      Award Amtrak its attorney's fees and the costs of suit incurred herein.

9.     Grant such other and further relief as the Court deems just and equitable.


Respectfully submitted,

Thomas E. Reinert, Jr. (D.C. Bar # 366867)
Jonathan C. Fritts (D.C. Bar # 464011)
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.3000 (p)
202.739.3001 (f)
treinert@morganlewis.com
jfritts@morganlewis.com

*Counsel for Plaintiff National Railroad*
*Corporation*

*Passenger*
OF COUNSEL:
William Herrmann
National Railroad Passenger Corp.
60 Massachusetts Avenue, NE
Washington, D.C. 20002
202.906.3971 (p)
hermaw@amtrak.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL RAILROAD PASSENGER CORPORATION      :

      Plaintiff,       :

      v.        :  Civil Action No.

BROTHERHOOD OF MAINTENANCE      :
OF WAY EMPLOYES, *et al.*,      :

      Defendants.      :

### VERIFICATION OF COMPLAINT

I, Joseph M. Bress, verify under penalty of perjury that I am the Vice President, Labor

Relations of the National Railroad Passenger Corporation ("Amtrak"), Plaintiff in the above-

captioned action; that I am the duly qualified and designated agent of Amtrak for the purpose of

making this verification; that I have read the foregoing Complaint subscribed on behalf of

Amtrak; and that the foregoing is true and correct.

Executed on October 19, 2007.

_____
Joseph M. Bress

JS-44
(Rev.1/05 DC)

**CIVIL COVER SHEET**

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| National Railroad Passenger Corporation | Brotherhood of Maintenance of Way Employes, A Division of the Teamsters Rail Conference, International Brotherhood of Teamsters; Brotherhood of Railroad Signalmen; National Conference of Firemen & Oilers, SEIU; American Train Dispatchers Association; Passenger Rail Labor Bargaining Coalition |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____11001_____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY) _____
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Thomas E. Reinert, Jr. Jonathan C. Fritts MORGAN,LEWIS & BOCKIUS LLP 1111 Pennsylvania Avenue, NW Washington, DC 20004 (202) 739-3000 | Roland P. Wilder, Jr. BAPTISTE & WILDER, P.C. 1150 Connecticut Ave., NW Suite 500 Washington, DC 20036 (202) 223-0723 |

**II. BASIS OF JURISDICTION**
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

**IV.  CASE ASSIGNMENT AND NATURE OF SUIT**
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**        OR        ○ **F. Pro Se General Civil**

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ⊙ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☒ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

Violation of Railway Labor Act, 45 U.S.C. 151 et. seq.

**VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐ | **DEMAND $** _____ Check YES only if demanded in complaint<br>**JURY DEMAND:** YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY** | (See instruction) | YES ☐  NO ☒ | If yes, please complete related case form.

DATE  10/19/2007     SIGNATURE OF ATTORNEY OF RECORD  *(signature)*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.   CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

# Exhibit A

## PASSENGER RAIL LABOR BARGAINING COALITION AGREEMENT

By the signatures of their authorized representatives below, the following organizations representing employees of National Passenger Railroad Corporation and Subsidiaries ("AMTRAK"), the nation's principal passenger rail carrier, hereby form the "Passenger Rail Labor Bargaining Coalition" (hereby "Coalition") and agree to be bound by the rules, regulations, principles and commitments set forth below:

American Train Dispatchers Association
Brotherhood of Maintenance of Way Employes Division, Rail Conference, International Brotherhood of Teamsters
Brotherhood of Railroad Signalmen
National Conference of Firemen & Oilers – SEIU

This Coalition shall be open to such other rail labor organizations as may be acceptable to all of the founding affiliates and which agree to adopt the rules, regulations, principles, and commitments of this Agreement by so stating in an addendum to this Agreement properly executed by the authorized representative(s) of such organization(s).

## I.    PRINCIPLES UNDERLYING THE FORMATION OF THE COALITION

This Coalition has been created in recognition of these principles:

- For many years the labor unions representing AMTRAK workers have bargained for agreements on an individual organization basis, without coordination amongst the organizations; this has resulted in the frustration of bargaining goals, extended negotiations, and overlong mediation efforts to the detriment of employees in all crafts.

- It has become very evident that settlements of AMTRAK's wage and rules bargaining disputes will be reached more expeditiously and successfully if the organizations coordinate their bargaining efforts.

- Coordinated bargaining with AMTRAK can best be accomplished by the creation of a formal entity to which participating organizations grant their powers of attorney and pledge their cooperation and, where necessary, financial commitment.

## II.    THE COALITION'S ORGANIZATIONAL STRUCTURE

In conducting its affairs, the Coalition shall honor these basic regulations and procedures:

1.    MEMBERSHIP RIGHTS. Every affiliated organization shall be entitled to a full voice and vote in all matters brought before the Coalition. The Coalition shall meet on a regular basis to discuss matters of concern to the affiliates. Affiliated organizations that fail to satisfy their obligations under this Agreement shall be subject to expulsion from the Coalition by a two-thirds vote of the affiliates voting on a one-vote-per-organization basis.

2.    VOTING PROCEDURES. Except as otherwise provided herein, all actions of the Coalition, including decisions to expend Coalition funds, must be approved by a majority of the Coalition's affiliated organizations on both a one-vote-per-organization and an overall membership basis. For purposes of counting membership strength in overall membership voting determinations, each organization shall determine and report to the Chairman the total number of members it represents on the AMTRAK system as of the date of this Agreement and shall cast such membership vote as a bloc.

3.    FINANCIAL SUPPORT. Coalition expenditures shall be paid for directly by each affiliated organization based on the organization's percentage of all members covered by the agreements for which the Coalition is bargaining. Expulsion or withdrawal from the Coalition shall not excuse an organization from paying its share of any such expenditures incurred prior to the expulsion or withdrawal, absent express written consent from each of the remaining affiliates.

4.    PROFESSIONAL ASSISTANCE. The Coalition may engage the services of legal counsel, economists, and such other professional advisors/consultants as it may deem necessary to assist the Coalition in achieving its stated goals. The decision to engage any such assistance, the persons or entities to be engaged, and the terms of the engagement shall be subject to a vote conducted pursuant to Paragraph 2 above.

5.    POWER OF ATTORNEY. The Coalition members will work cooperatively to develop common or coordinated proposals derived from existing Section 6 notices regarding rates of pay, rules and working conditions for bargaining with AMTRAK. By executing this Agreement and becoming an affiliate of the Coalition, each organization acknowledges that it has granted to the Coalition a power of attorney to act on the organization's behalf insofar as representing the organization in collective bargaining over the Section 6 notices and proposals mentioned above. This power of attorney is not revocable for the duration of a bargaining round, as set forth in Paragraph III-3, without the express written consent of every other affiliate of the Coalition. An affiliate may limit its power of attorney to certain issues (i.e. health and welfare) with the consent of the other affiliates. No affiliate shall conclude a separate agreement resolving common issues contained in Section 6 notices or proposals served or made by the Coalition and/or its affiliates in bargaining with AMTRAK without the express written consent of every other affiliate of the Coalition.

- 2 -

## III.    THE COALITION'S BARGAINING PROTOCOL

The following principles shall guide the Coalition's bargaining-related activities:

1.    PARTICIPATION IN BARGAINING. Every affiliate shall be entitled and obligated to participate directly on the Coalition's bargaining team and to attend all bargaining sessions between the Coalition and the representative of the earners.

2.    SELECTION OF SPOKESPERSONS. The Coalition will designate chief bargaining spokespersons for particular issues identified in the processes described in Paragraph II-5 above. The designation of such spokespersons shall be done in accordance with the voting procedures in Paragraph II-2. A spokesperson will be responsible for the general direction of bargaining on the particular issue for which he/she was designated until such time as he/she is replaced by a vote conducted under Paragraph II-2.

3.    RATIFICATION OF AGREEMENTS.

No tentative agreement negotiated by the Coalition shall be submitted to the respective memberships of the Coalition's affiliates for ratification until the decision to initiate the ratification process is approved by a two-thirds majority of the Coalition's affiliated organizations on both a one-vote-per-organization basis and an overall membership basis, membership being determined in the same manner as in Paragraph II-2 above. When submission of a tentative agreement for ratification has been so approved, every affiliate shall place the tentative agreement before its affected membership for approval or rejection in accordance with its own internal procedures. An affiliate's obligations under this Agreement terminate when the affiliate ratifies the agreement proffered under this Paragraph.

4.    WITHDRAWAL FROM COALITION BARGAINING.

Once becoming affiliated with the Coalition by execution of this Agreement, or any addendum to it, organizations shall not withdraw from the Coalition without the express written consent of every other affiliate of the Coalition, until the affiliate's obligations terminate pursuant to Paragraph III-3.

5.    EMERGENCY BOARDS, ARBITRATION PROCEEDINGS, ETC.

The Coalition shall represent its affiliates in all proceedings before Presidential Emergency Boards, arbitration panels, or other forums where disposition of common issues in Section 6 notices or proposals is placed at issue.

- 3 -

6.    ON-PROPERTY BARGAINING.

This Agreement does not affect the rights of affiliates to serve Section 6 notices upon the carrier for local issues.

Signed this 23rd day of August, 2007 in Washington, D.C.

_____
American Train Dispatchers Association

_____
Brotherhood of Maintenance of Way Employes Division,
Rail Conference, International Brotherhood of Teamsters

_____
Brotherhood of Railroad Signalmen

_____
National Conference of Firemen & Oilers, SEIU

- 4 -

# Exhibit B

# BAPTISTE & WILDER, P.C.

ATTORNEYS AT LAW

1150 CONNECTICUT AVENUE, N.W., SUITE 500

WASHINGTON, D.C. 20036

PHONE: (202) 223-0723

FAX: (202) 223-9677

FIRM@BAPWILD.COM

ROLAND P. WILDER, JR.                                              RPWILDERJR@BAPWILD.COM

September 12, 2007

Honorable Harry S. Hoglander
Chairman
National Mediation Board
1301 K Street, N.W.
Washington, D.C. 20570

### Re:    *Amtrak NMB Case Nos. A-13340 (ATDA),*
### *A-13080 (BMWED), A-13185 (BRS), A-13370 (NCFO)*

Dear Mr. Hoglander:

As earlier advised, the ATDA, BMWED, BRS and NCFO have formed the Passenger Rail Labor Bargaining Coalition to bargain with Amtrak on a multi-union basis in an effort to bring this much delayed dispute to a conclusion. Enclosed is the Passenger Rail Bargaining Coalition Agreement and a letter to Amtrak's Chief Labor Relations Officer, Joseph C. Bress, advising of the Organizations' intention to negotiate jointly, communicating the PRLBC's uniform bargaining position on common issues, and requesting the Carrier's cooperation in scheduling meetings with us.

This letter is to ask the Mediation Board to consolidate the captioned cases, collectively docket them under a single case number, and assign a Mediator to assist the parties in reaching agreement. The appropriateness of this request is made clear by the Board's actions in the recently concluded round of national handling in the rail freight industry (NMB Letter of June 15, 2005, No. A-13371), and the dispute between Metro-North Commuter R.R. and the Metro-North Labor Coalition, representing twelve crafts of the Carrier's employees (*see*, Report of PEB 240, Jan. 19, 2007, at 5-6). Both disputes ended when voluntary agreements were signed and ratified by all affected crafts earlier this year.

We cannot assure that bargaining on a multi-union basis will be successful on Amtrak's property. Yet it has become apparent over more than seven years of fruitless negotiations and mediation that more traditional

Honorable Harry S. Hoglander
September 12, 2007
Page 2

approaches to bargaining at Amtrak have failed. Employees have waited too
long and are too angry to ratify so-called "pattern" settlements, which at best
reflect another organization's solution to problems uniquely affecting the
employees it represents.        Recent experience indicates that ratifiable
settlements emerge from multi-union bargaining, in which issues common to
all organizations receive priority attention, not from an agreement with a
single organization having a unique agenda.

       We will be pleased to meet with you and your colleagues to discuss this
request if the Board wishes.

                              Respectfully yours,

                              BAPTISTE & WILDER, P.C.

                        By: _____
                              Roland P. Wilder, Jr.

cc:     J.C. Bress
        L. Gibbons

# Exhibit C



# PASSENGER  RAIL  LABOR  BARGAINING  COALITION

W. Dan Pickett
*Chairman*

September 12, 2007

Mr. Joseph C. Bress
Vice President – Labor Relations
National Railroad Passenger Corporation
30th Street Station, Second Floor
Philadelphia, PA  19104

Dear Mr. Bress:

American Train
Dispatchers Association
F.L. McCann
*President*

Brotherhood of
Maintenance of Way
Employes/IBT
Freddie N. Simpson
*President*

Brotherhood of
Railroad Signalmen
W. Dan Pickett
*President*

International Conference of
Firemen and Oilers, SEIU
George J. Francisco, Jr.
*President*

To date, four organizations representing employees of the National Railroad Passenger Corporation have become signatory to the Passenger National Bargaining Coalition Agreement. That agreement designates the Passenger Rail Labor Bargaining Coalition (PRLBC) as the representative of the four organizations identified in Attachment A for the current round of bargaining with Amtrak. This will advise that the four organizations participating in the PRLBC intend to bargain on a coordinated basis with respect to the rates of pay, rules and working conditions of the employees they represent. You will be advised whenever other organizations authorize the PRLBC to represent them in this bargaining.

Attachment B sets forth in outline form proposed terms for the resolution of common issues described in outstanding Section 6 Notices earlier exchanged by the parties. It is intended to supersede Section 6 Notices served, and all proposals made, by the parties relating to other common or craft-specific issues that have not yet been resolved. [1]/ Tentative agreements between the Carrier and any PRLBC-represented organization are not affected by this offer. We are optimistic that concentration on major issues will serve the mutual interest of carrier and employee in achieving a prompt, orderly resolution of these long-standing disputes.

---

[1] Note that the ATDA intends to progress its proposal for pay parity/equity with respect to the classifications of Assistant Chief Train Dispatcher, Load Dispatcher and Power Director. Although the number of Dispatchers involved is small, the pay inequities in and between these classifications are sufficiently severe to warrant immediate attention.

Mr. Joseph C. Bress
September 12, 2007
Page 2

The PRLBC-represented organizations have designated
Roland P. Wilder, Jr., Esq., Baptiste & Wilder, P.C., 1150
Connecticut Ave., N.W., Suite 500, Washington, D.C. 20036 (202)
223-0723, to serve as their spokesperson. Your cooperation in
scheduling negotiating sessions with us is appreciated.

Very truly yours,

American Train Dispatchers Association

Brotherhood of Maintenance of Way
Employes, a division of the Teamsters
Rail Conference, International
Brotherhood of Teamsters

Brotherhood of Railroad Signalmen

National Conference of Firemen &
Oilers, SEIU

cc:   H. Hoglander
      L. Gibbons

# Exhibit D

## ATTACHMENT B

## Proposal by PRLBC to Resolve Current Contract Dispute on Amtrak

### September 17, 2007

### 1.    Current Cost-of-Living-Adjustments - 2000 to 2007

Effective September 30, 2007 the cumulative wage increases paid under the Harris COLA clause between January 1, 2000 and October 1, 2007 are eliminated - i.e. current hourly wage rates are reduced by $1.71.

### 2.    General Wage Increases

| | |
|---|---|
| Effective October 1, 2007 | 24.5% |
| Effective July 1, 2008 | 4.0% |
| Effective July 1, 2009 | 4.5% |

### 3.    Future Cost-of-Living-Adjustments - Post Amendable Date

The existing Harris COLA provisions shall be continued with the first adjustment effective July 1, 2010.

### 4.    Retroactivity

Within 30 days of signing the Agreement(s) each eligible employee shall receive a lump-sum retroactive wage payment of $13,500. All employees with Amtrak service during any month between January 2000 and September 2007 shall be eligible. Eligible employees with less than one day of service during some but not all 93 months of the retroactive period shall receive a pro-rata share of $13,500 based upon service months with at least one day of service.

### 5.    Health and Welfare Cost Sharing

Effective January 1, 2010, all covered employees will contribute the same monthly dollar amount as required under the agreement(s) between the RLBC and the NCCC.

1

6.    **Health and Welfare Plan Design Changes**

A.    Effective the month following the date of signing of this Agreement(s) the AMPLAN will incorporate the same design features (deductibles, co-payments, prescription co-payments), access to managed care, and eligibility requirements that exist under the comparable plan negotiated between the NCCC and the RLBC.

B.    Effective the month following the date of signing of this Agreement(s) all existing medical and ancillary benefits, including dental, vision, life insurance and AD&D insurance, shall apply uniformly to all organizations represented by the PRLBC.

C.    Effective the month following the date of signing of this Agreement(s) the off-track vehicle accidence insurance plan shall apply uniformly to all organizations represented by the PRLBC.

D.    Effective the month following the date of signing of this Agreement(s) establish Supplemental Sickness benefit levels equal to those in the respective agreement(s) between NCCC and RLBC. Raise the 20 day notification requirement under the Supplemental Sickness program to 60 days consistent with the agreement(s) between the NCCC and the RLBC. (This proposal does not apply to the ATDA).

7.    **Meals, Lodging and Travel Expense**

Effective on the date of signing of this Agreement(s) the meals, lodging and travel expense payments under existing Agreements shall be increased by 20%, consistent with the agreement(s) between the NCCC and BMWE.

8.    **Moratorium**

The Agreement(s) shall remain in effect through December 31, 2009 and thereafter until changed or modified in accordance with the provisions of the Railway Labor Act, as amended. No party to the Agreement(s) shall serve, prior to November 1, 2009 (not to become effective before January 1, 2010), any notice or proposal for change or modification of the Agreement(s).

2

# Exhibit E

NATIONAL RAILROAD PASSENGER CORPORATION
60 Massachusetts Avenue, NE, Washington, DC 20002
tel 202 906 2293  fax 906 3783

Joseph M Bress
Vice President, Labor Relations



September 14, 2007

**FAX AND U.S. MAIL**

Mr. Harry S. Hoglander
Chairman
National Mediation Board
1301 K. St., N.W.
Suite 250 East
Washington, DC 20005

RE:    Amtrak NMB Cases Nos. A-13340 (ATDA), A-13080 (BMWED), A-13185 (BRS),
       A-11370 (NCFO)

Dear Mr. Harry Hoglander:

Amtrak is prepared to meet at the Board's offices as directed by the Board on the afternoon of
Monday September 17 for sessions in the above-captioned mediation cases.

Based on Mr. Roland Wilder's September 12, 2007 letters to the Board and to me, Amtrak
understands that ATDA, BMWED, BRS, and NCFO, have designated the Passenger Rail Labor
Bargaining Coalition ("PRLBC") and Mr. Wilder as their spokesman in these mediation cases.
From this, Amtrak understands that these four unions intend to engage in some from of
coordinated bargaining. Amtrak has no objection with the unions coordinating their bargaining
efforts with Amtrak, nor with the unions' designation of spokesperson, which is their privilege.

Amtrak does object, however, to Mr. Wilder's request that the Board "consolidate the captioned
cases" and "collectively docket them under a single case number." Amtrak has not consented to
multi-union bargaining with these four unions. There is no history of Amtrak negotiating jointly
with these four unions, and during this round, each union has pursued separate negotiations and
the Board has separately docketed each mediation case. There is no craft organization structure
among these four organizations that suggests that multi-union bargaining with these particular
labor organizations would be efficient and effective. Most importantly, with respect to each of
the four labor organizations, Amtrak has separate work rule proposals pending that cannot be
properly addressed in multi-union bargaining. Indeed, even Mr. Wilder's September 12 letter to
me notes ATDA's intention to pursue certain issues separately.

September 14, 2007
Page 2



Amtrak does not want these issues of the scope of bargaining under the Railway Labor Act to
hinder the parties' ability to move towards agreements. We are prepared to deal with PRLBC as
the spokesperson for each of the labor organizations. But that does not require any
reorganization in the Board's docket and the Board should decline that request.

Sincerely,

Joseph M. Bress
*Vice President, Labor Relations*

cc:    Roland P. Wilder, Jr.
       William Herrmann

# Exhibit F

Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:  202.739.3000
Fax: 202.739.3001
www.morganlewis.com

# Morgan Lewis
COUNSELORS AT LAW

**Thomas E. Reinert, Jr.**
Partner
202.739.5084
treinert@morganlewis.com

October 11, 2007

## VIA EMAIL AND HAND DELIVERY

Harry R. Hoglander
Chairman
National Mediation Board
1301 K Street, NW
Suite 250 East
Washington, DC  20005

Re:    Amtrak NMB Cases Nos. A-13340 (ATDA), A-13080 (BMWED),
         A-13185 (BRS), A-11370 (NCFO)

Dear Chairman Hoglander:

I am writing as a follow-up to Joseph Bress' letter of September 14, 2007, to express Amtrak's legal concerns about the effect of the Passenger Rail Labor Bargaining Coalition Agreement ("PRLBC Agreement"), entered on August 23, 2007 among ATDA, BMWED, BRS, and NCFO, on the possible exhaustion of the Railway Labor Act major dispute procedures by those labor organizations.

Stated briefly, those labor organizations have entered an unlawful agreement that prohibits their individual negotiations with Amtrak and gives control of the negotiations process to the BMWE, as the coalition member with the largest membership.  If the Board were to release these organizations from mediation, then there would be a substantial legal question whether the labor organizations were failing to "exert every reasonable effort to make and maintain agreements concerning rates of pay, rules and working conditions, and to settle all disputes," as required by Section 2 First, 45 U.S.C. § 152 First.  Amtrak would have a strong legal basis for seeking court intervention that would require, after release by the National Mediation Board, that the labor organizations return to mediation or direct negotiations.

**Morgan Lewis**
COUNSELORS AT LAW

Harry R. Hoglander
October 11, 2007
Page 2

The unlawful intent of the PRLBC Agreement could not be more plain. Section II.5 of the PRLBC Agreement provides that: *"No affiliate shall conclude a separate agreement resolving common issues contained in Section 6 notices or proposals served or made by the Coalition and/or its affiliates in bargaining with AMTRAK without the express written consent of every other affiliate of the Coalition."* The voting procedures under the agreement require that all bargaining actions be approved by either a majority or two-thirds on *"both a one-vote-per-organization and an overall membership basis"* Sections II.2 and III.3. These provisions, entered after years of independent bargaining and mediation by each labor organization with Amtrak, can only be intended to prevent individual agreements by each labor organization.

Amtrak has not consented to multi-union bargaining with these four unions. There is no history of Amtrak negotiating jointly with these four unions and the Board has separately docketed each mediation case. There is no craft organization structure among these four organizations that suggests that multi-union bargaining with these particular labor organizations would be efficient and effective.

The BMWE and the other organizations for several years have resisted bargaining over Amtrak's work rule proposals, which attempt to bring much needed productivity improvements to Amtrak's passenger rail operations. The formation of the Coalition is the direct result of objections by the BMWE to the tentative agreement entered by Amtrak and another labor organization, the BLET, that includes such new work rule provisions. That is stated indirectly in the September 12, 2007 letter to the Board from Mr. Roland Wilder, Esq., counsel for PRLBC: *"Employees... are too angry to ratify so-called "pattern" settlements, which at best reflect another organization's solution to problems uniquely affecting the employees its represents."* The Coalition is an effort to prevent any of these organizations from addressing its unique problems at the bargaining table. While the Coalition members are legally entitled to coordinate their bargaining position through sharing information and voluntary arrangements, they are trying to change Amtrak's bargaining process in order to coerce other labor organization *not* to enter agreements with Amtrak.

The Board's authority to control the timing of release gives it the power to prevent an unnecessary legal dispute over the structure of bargaining. The Board can advise the Coalition members that it will not release them from mediation unless and until they void the PRLBC Agreement, agree not to attempt to force unlawful coalition bargaining on Amtrak, and individually participate in good faith negotiations with the intent of reaching individual agreements. Until such negotiations take place, mediation cannot be concluded as unsuccessful

**Morgan Lewis**
COUNSELORS AT LAW

Harry R. Hoglander
October 11, 2007
Page 3

under Section 5, First of the Act, 45 U.S.C. §155, First. Amtrak respectfully requests that the
Board defer a decision to terminate mediation and to proffer arbitration.

Respectfully submitted,

Thomas E. Reinert, Jr.
*Counsel for National Railroad Passenger Corporation*

cc:     Joseph M. Bress
        *Vice President Labor Relations*
        *National Railroad Passenger Corporation*

        Roland P. Wilder, Jr.
        *Counsel*
        *National Railroad Passenger Corporation*

        Mary L. Johnson
        *General Counsel*
        *National Mediation Board*

# Exhibit G

# BAPTISTE & WILDER, P.C.

ATTORNEYS AT LAW
1150 CONNECTICUT AVENUE, N.W., SUITE 500
WASHINGTON, D.C. 20036
PHONE: (202) 223-0723
FAX: (202) 223-9677
FIRM@BAPWILD.COM

ROLAND P. WILDER, JR.

RPWILDERJR@BAPWILD.COM

October 12, 2007

### *VIA FACSIMILE (202-692-5082)*

Honorable Harry R. Hoglander
Chairman
National Mediation Board
1301 K Street, N.W.
Washington, D.C. 20570

### Re:  *Amtrak NMB Case Nos. A-13340 (ATDA), A-13080 (BMWED), A-13185 (BRS), A-13370 (NCFO)*

Dear Mr. Chairman:

This letter is the Passenger Rail Labor Bargaining Coalition's response to Mr. Reinert's letter to you of October 11, 2007, on behalf of Amtrak, which was delivered to me by hand at the Hotel Monaco yesterday. Although the letter merely elaborates on Amtrak's frivolous objections to the PRLBC, the Board has chosen to treat this matter as an emergency, instructing us to respond by 10:00 A.M. today.  Please consider this letter the PRLBC's response to the carrier and objection to the process. As discussed more fully below, Amtrak articulated no credible legal or factual basis to cause the National Mediation Board to refrain from proffering arbitration under § 5 of the Railway Labor Act. To the contrary, Mr. Reinert's letter again demonstrates Amtrak's reluctance to make every reasonable effort to resolve this drawn out dispute.

The Board is without authority under the Act to grant the relief sought by the Carrier for purported § 2, First violations. The NMB's role in determining whether to proffer arbitration under § 5 of the Act is clear.  The Act commands, in part:

> If such efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action (except as provided in paragraph third of this section and in section 160 of this title) to

Honorable Harry R. Hoglander
October 12, 2007
Page 2

    induce the parties to submit their controversy to arbitration, in
    accordance with the provisions of this chapter.

45 U.S.C. § 155(b).  If either or both parties decline arbitration, a 30 day
period in which no changes can be made ensues. The NMB may also notify the
President that it believes the dispute will substantially disrupt interstate
commerce at which point the President may establish an emergency board.

    That mediation under § 5 of the Act has been unsuccessful cannot be
seriously disputed. The captioned disputes have been in process for over seven
years during which Amtrak has resorted to one delaying tactic after another to
defeat agreements with any PRLBC affiliate.  The notion that the PRLBC
agreement is somehow preventing one or more of our affiliates from making
an individual agreement with Amtrak is false as a matter of fact.  Until the
Carrier makes an offer that at least one PRLBC affiliate might wish to accept,
its claims that the PRLBC Agreement violates § 2, First of the Act is premature
and not ripe for disposition.

    The Board's statutory duty to proffer arbitration if mediation is
unsuccessful does not encompass remedying alleged § 2, First violations. As
the Supreme Court made clear in *Chicago v. N.W. Ry. v. United Transp.
Union*, 402 U.S. 570, 580-81 (1971), "Congress intended the enforcement of §
2 First to be overseen by appropriate judicial means rather than by the
Mediation Board's retaining jurisdiction over disputes or by prematurely
releasing the parties for resort to self-help if it feels such action called for."
Thus, the Board is barred from conditioning a release from mediation upon
rescission of the PRLBC Agreement. "The Act, to be sure, requires the parties
to 'exert every reasonable effort to make and maintain agreements' . . . But the
Act expressly preserves each party's right to choose its own bargaining
representative." *United Transp. Union v. Grand Trunk R.R. Co.*, 901 F.2d
489 (6th Cir. 1990). Here, Amtrak has essentially asked the Board to act as an
accomplice, in its attempt to interfere with the right to designate
representatives under § 2, Third of the Act, by using its power under § 5 to
withhold a proffer.  There is simply no legal basis for doing so.  The Eighth
Circuit has written, "We emphasize that the right to designate a bargaining
representative applies equally to both side of the negotiating table; each side is
obligated to 'treat' with the other's designee." *American Railway and Airway
Supervisors Assoc. v. Soo Line R.R. Co.*, 891 F.2d 675 (8th Cir. 1989).  It
further stated, "If the unions select a single representative, then that
representative may lawfully insist that the same contract terms be applied to
all unions that have given their prior approval." *Id.*  Put simply, the PRLBC
has every right under the Act to insist on identical common terms for each of
its members.

Honorable Harry R. Hoglander
October 12, 2007
Page 3


Despite the Coalition's right to insist on identical common terms in its affiliates' agreements, there is no merit to the suggestion that the PRLBC Agreement precludes discussion of work rules unique to individual organizations. Amtrak's assertion is demonstrably erroneous. Only agreements on "common issues" are subject to the PRLBC approval procedure complained of by the Carrier.

Unlike the Carrier, the PRLBC recently made a comprehensive proposal aimed at resolving the dispute. The Coalition sent a proposal to the Carrier (and the Board) on September 9, 2007. At the mediation session held on September 17, 2007, the Coalition articulated its rationale for each portion of its proposal to the Carrier. To date, Amtrak has made no meaningful response to that proposal. Moreover, at the mediation session, I asked Amtrak's chief negotiator, Joseph Bress, for the list of work rule proposals the Carrier still wished to pursue and emphasized that craft specific issues can and would be negotiated. Rather than assembling the list of work rule proposals and working with me to devise a structure for resolving the dispute, the Carrier has thus far evaded meaningful dialogue with the PRLBC. Yesterday's letter is more of the same. This suggests that it is Amtrak, and not the Coalition, that is not complying with its § 2, First duty.

In sum, Amtrak's attempts to extend an already inordinately prolonged dispute, must be neither encouraged nor condoned. The NMB should reject out of hand Amtrak's improper attempt to induce the Board to ignore its duties under the Act.


                              Respectfully yours,

                              BAPTISTE & WILDER, P.C.


                              By:  Roland P. Wilder, Jr.  (rcs)


cc:    T.E. Reinert Jr.
       J.C. Bress
       L. Gibbons

# Exhibit H





# Fax Transmission

**Date:** October 18, 2007

**TO:** **Freddie Simpson, President, BMWE**
**Rick Palmer, Director, Labor Relations, AMTRAK**
**Joseph Bress, VP, Labor Relations, AMTRAK**
**Charles Woodcock, Dir., Labor Relations, AMTRAK**
**Roland Wilder, Esq.**

**Fax Number:** **(202) 872-1222, (216) 241-6286,**
**(215) 349-1260, (202) 906-3783, (202) 223-9677**

**FROM:** **Lawrence E. Gibbons**
**Director, Office of Mediation Services**

**Sent By:** Valeta Hill-Rawls,
Mediation Program Specialist
(3) three pages sent

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No.: A-13080, AMTRAK & BMWE**

Please see attached.



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692–5000

October 18, 2007

**<u>VIA FACSIMILE & U.S. MAIL</u>**

Mr. Freddie Simpson
President
Brotherhood of Maintenance of Way Employees
20300 civic Center Drive, Suite 320
Southfield, MI 48076

Mr. J. M. Bress
Vice President Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

  **Re: NMB Case No. A-13080, _Amtrak & BMWE_**

Gentlemen:

  On April 7, 2004 the Brotherhood Maintenance of Way Employees by its duly authorized representative made an application in accordance with the provisions of the Railway Labor Act for the services of the National Mediation Board (Board) in the following dispute:

> "All issues as the carrier is protracting bargaining by
> failing to provide enough dates to promptly resolve
> Section 6 Notices or bargain expeditiously"

  Despite the Board's best efforts to bring about an amicable settlement through mediation, the parties have failed to reach agreement disposing of the above-described dispute.

  In accordance with Section 5, First, of the Railway Labor Act, the National Mediation Board therefore now requests and urges that you enter into an agreement to submit the controversy to arbitration as provided in Section 8 of the Act.

**Page 2**
**NMB Case No. A-13080**
**October 18, 2007**


Your written reply is requested by **October 25, 2007**.  The absence of unconditional acceptance of the proffer by October 25, 2007 will be considered as rejection of the proffer.

By direction of the NATIONAL MEDIATION BOARD

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

cc:   Rick Palmer, Director, Labor Relations, AMTRAK
      Charles Woodcock, Director, Labor Relations, AMTRAK
      Roland Wilder, Esq.
      Board Members
      Patricia Sims, Senior Mediator, NMB
      A. Michael Tosi, Mediator, NMB





# Fax Transmission

**Date:** October 18, 2007

**TO:** **W. Dan Pickett, President, BRS**
**Rick Palmer, Director, Labor Relations, AMTRAK**
**Joseph Bress, VP, Labor Relations, AMTRAK**
**Charles Woodcock, Dir., Labor Relations, AMTRAK**
**Roland Wilder, Esq.**

**Fax Number:** (540) 622-6532, (215) 349-1260, (202) 906-3783, (202) 223-9677

**FROM:** **Lawrence E. Gibbons**
**Director, Office of Mediation Services**

**Sent By:** Valeta Hill-Rawls, Mediation Program Specialist
Three (3) pages sent

**Phone Number:** 202-692-5030

**Fax Number:** 202-692-5084

**Subject:** **NMB Case No. A-13185, *AMTRAK & BRS***


Please see attached.



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692–5000                     October 18, 2007

**<u>VIA FACSIMILE & U.S. MAIL</u>**

Mr. W. Dan Pickett
President
Brotherhood of Railroad Signalmen
Box U-601 W. Golf Road
Mt Prospect, IL 60056

Mr. J. M. Bress
Vice President, Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

   Re:   **NMB Case No. A-13185, _Amtrak & BRS_**

Gentlemen:

   On August 13, 2001 the Brotherhood of Railroad Signalmen by its duly authorized representative made an application in accordance with the provisions of the Railway Labor Act for the services of the National Mediation Board (Board) in the following dispute:

> "Organization's notice dated December 18,1999 attached hereto and identified as Exhibit A Carrier's June 12, 2000 notice attached and identified as Exhibit B"

   Despite the Board's best efforts to bring about an amicable settlement through mediation, the parties have failed to reach agreement disposing of the above-described dispute.

   In accordance with Section 5, First, of the Railway Labor Act, the National Mediation Board therefore now requests and urges that you enter into an agreement to submit the controversy to arbitration as provided in Section 8 of the Act.

Page 2
NMB Case No. A-13185
October 18, 2007

Your written reply is requested by **October 25, 2007**.  The absence of unconditional acceptance of the proffer by October 25, 2007 will be considered as rejection of the proffer.

By direction of the NATIONAL MEDIATION BOARD

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

cc:    Rick Palmer, Director, Labor Relations, AMTRAK
       Charles Woodcock, Dir., Labor Relations, AMTRAK
       Roland Wilder, Esq.
       Board Members
       Patricia Sims, Senior Mediator, NMB
       A. Michael Tosi, Mediator, NMB





# Fax Transmission

**Date:**  October 18, 2007

**TO:**  **G. J. Francisco, Jr., President, NCFO/SEIU**
**Richard Palmer, Director, Labor Relations, AMTRAK**
**Charles Woodcock, Director, Labor Relations, AMTRAK**
**Joseph Bress, Vice President, Labor Relations, AMTRAK**
**Roland Wilder, Esq.**

**Fax Number:**  (202) 872-1222, (215) 349-1260, (202) 906-3783
(202) 223-9677

**FROM:**  **Lawrence E. Gibbons**
**Director, Office of Mediation Services**

**Sent By:**  Beth Stinson
Mediation Program Specialist

**Pages Sent:**  3 (including cover page)

**Phone Number:**  202-692-5030

**Fax Number:**  202-692-5084

**Subject:**  **NMB Case Number: A-13370, _AMTRAK – NCFO_**

Please see attached.



# NATIONAL MEDIATION BOARD
## WASHINGTON, D.C. 20572

October 18, 2007

(202) 692–5000

### VIA FACSIMILE & U.S. MAIL

Mr. G. J. Francisco, Jr
President, NCFO/SEIU
1023 15th Street NW 10th Floor
Washington, DC 20005

Mr. Joseph M. Bress
VP-Labor Relations
National Railroad Passenger
60 Massachusetts Ave
Washington, Dc 20002

Re:    NMB Case No: A-13370, *Amtrak & NCFO*

Gentlemen:

On May 16, 2005 the NCFO/SEIU by its duly authorized representative made an application in accordance with the provisions of the Railway Labor Act for the services of the National Mediation Board (Board) in the following dispute:

> "Organization's Section 6 Notice dated 12/16/99 with attachments and Carrier's Section 6 Notice dated 6/12/00 to revise wages, rules, working conditions, pension plan, vision plan, dental plan, health and welfare"

Despite the Board's best efforts to bring about an amicable settlement through mediation, the parties have failed to reach agreement disposing of the above-described dispute.

In accordance with Section 5, First, of the Railway Labor Act, the National Mediation Board therefore now requests and urges that you enter into an agreement to submit the controversy to arbitration as provided in Section 8 of the Act.

Your written reply is requested by **October 25, 2007**.  The absence of unconditional acceptance of the proffer by October 25, 2007 will be considered as rejection of the proffer.

**Page 2**
**NMB Case No. A-13370**
**October 18, 2007**

Your written reply is requested by **October 25, 2007**. The absence of unconditional acceptance of the proffer by October 25, 2007 will be considered as rejection of the proffer.

By direction of the NATIONAL MEDIATION BOARD.

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

cc:     Rick Palmer, Director, Labor Relations, AMTRAK
        Charles Woodcock, Dir., Labor Relations, AMTRAK
        Roland Wilder, Esq.
        Board Members
        Zachery Jones, Senior Mediator, NMB
        Terri Brown, Mediator, NMB



# Fax Transmission

**Date:**   October 18, 2007

**TO:**   F. L. McCann, International President, ATDA
Richard Palmer, Director, Labor Relations, AMTRAK
Charles Woodcock, Director, Labor Relations, AMTRAK
Joseph Bress, Vice President, Labor Relations, AMTRAK

**Fax Number:**   (216) 241-6286, (215) 349-1260, (202) 906-3783

**FROM:**   Lawrence E. Gibbons
Director, Office of Mediation Services

**Sent By:**   Beth Stinson
Mediation Program Specialist

**Pages Sent:**   3 (including cover page)

**Phone Number:**   202-692-5030

**Fax Number:**   202-692-5084

**Subject:**   NMB Case Number: A-13340, *AMTRAK – ATDA*

Please see attached.



# NATIONAL MEDIATION BOARD
## WASHINGTON, D.C. 20572

(202) 692–5000                              October 18, 2007

**<u>VIA FACSIMILE & U.S. MAIL</u>**

Mr. F. L. McCann
International President
American Train Dispatchers Assoc
1370 Ontario Street., Suite 1040
Cleveland, OH 44113-1736

Mr. J. M. Bress
Vice President, Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

      **Re:    NMB Case No. A-13340, *Amtrak & ATDA***

Gentlemen:

      On November 9, 2004 the American Train Dispatchers Association by its duly authorized representative made an application in accordance with the provisions of the Railway Labor Act for the services of the National Mediation Board (Board) in the following dispute:

      "Organization's Notice dated December 26, 2000 attached hereto, and identified as Exhibit "A", Carrier's Notice dated November 15, 2001 and attached hereto and identified as Exhibit "B"

      Despite the Board's best efforts to bring about an amicable settlement through mediation, the parties have failed to reach agreement disposing of the above-described dispute.

      In accordance with Section 5, First, of the Railway Labor Act, the National Mediation Board therefore now requests and urges that you enter into an agreement to submit the controversy to arbitration as provided in Section 8 of the Act.

Page 2
NMB Case No. A-13340
October 18, 2007

Your written reply is requested by **October 25, 2007**.  The absence of unconditional acceptance of the proffer by October 25, 2007 will be considered as rejection of the proffer.

By direction of the NATIONAL MEDIATION BOARD.

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

cc:    Rick Palmer, Director, Labor Relations, AMTRAK
       Charles Woodcock, Dir., Labor Relations, AMTRAK
       Board Members
       Zachery Jones, Senior Mediator, NMB
       Richard Hanusz, Mediator, NMB