# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

_____
                                                )
NATIONAL RAILROAD PASSENGER CORPORATION)
                                                )
              Plaintiff,                        )
                                                )
       v.                                       )        Civil Action No.
                                                )        1:07-01888-HHK
BROTHERHOOD OF MAINTENANCE OF WAY               )
EMPLOYES, *etc., et. al.*                       )
                                                )
              Defendants.                       )
_____)

## DEFENDANTS' MOTION TO DISMISS
## FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, 28 U.S.C., defendants Brotherhood Of Maintenance Of Way Employes/I.B.T., Brotherhood of Railroad Signalmen, National Conference Of Firemen & Oilers/SEIU, American Train Dispatchers Association, and Passenger Rail Labor Bargaining Coalition (collectively "Defendants") move to dismiss the Verified Complaint For Declaratory And Injunctive Relief ("Complaint") for lack of subject matter jurisdiction.  In support of the motion, Defendants state that, for the reasons set forth in their attached **Statement Of Points And Authorities In Support Of Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction,** this Court lacks subject matter jurisdiction because the allegations of the Complaint and additional facts establish that there does not currently exist an actual justiciable case and controversy ripe for adjudication required by Article III, Section II of the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

Dated: November 19, 2007          Respectfully submitted,


/s/ Roland P. Wilder
Roland P. Wilder, Jr. (DC Bar No. 69609)
Stefan P. Sutich (DC Bar No. 493451)
BAPTISTE & WILDER, P.C.
1150 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20036
Tel:  (202) 223-0723
Fax: (202) 223-9677

**STATEMENT OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
FOR LACK OF SUBJECT MATTER JURISDICTION**

**Table of Contents**

Page

INTRODUCTION ........................................................................................1

STATEMENT OF FACTS ...........................................................................2

ARGUMENT ...............................................................................................9

I.     Standard of review applicable to Defendants' Rule 12(b)(1) motion....................9

II.    Ripeness principles ..........................................................................10

III.   Amtrak's alleged injury is not constitutionally ripe because it is not "certainly impending"..............................................................13

IV.    Amtrak's claims are prudentially unripe for adjudication …………….…...........14

       A.     The issues are unfit for judicial resolution at this time..............................14

       B.     Postponing a decision will cause Amtrak no harm and will benefit the Court……………………………………………………...........17

CONCLUSION...........................................................................................18

CERTIFICATE OF SERVICE………………………………………….. ............ 19

**INTRODUCTION**

This case involves ongoing negotiations concerning collective bargaining agreements between parties subject to the Railway Labor Act ("RLA"), 45 U.S.C. § 151, *et. seq.* Defendants move pursuant to F.R.Civ.P. 12(b)(1) to dismiss the Verified Complaint For Declaratory and Injunctive Relief ("Complaint") for lack of subject matter jurisdiction on ripeness grounds.

On August 23, 2007, the four labor organization defendants[1] entered into an agreement among themselves forming the defendant Passenger Rail Labor Bargaining Coalition ("PRLBC"), an entity intended to formally coordinate their bargaining negotiations with plaintiff National Railroad Passenger Corporation ("Amtrak"). Prior to the filing of this lawsuit on October 19, 2007, in three letters and one bargaining session, the only acts taken by the PRLBC in negotiations with Amtrak were (1) the announcement of its existence; (2) the making of a common economic proposal on behalf of each of the affiliated labor organization defendants; (3) the expression of a willingness to negotiate Amtrak's work rule proposals previously made to the labor organization defendants; (4) the making of an unsuccessful request to the National Mediation Board to consolidate mediation dockets; and (5) a denial that its Agreement was illegal. Prior to filing this lawsuit, in three letters and the same bargaining session, Amtrak's responses to these acts were (1) an acknowledgement that PRLBC affiliates had the right to engage in coordinated bargaining and the privilege to select PRLBC as bargaining representative; (2) statements that Amtrak had not consented to multi-union bargaining by the PRLBC

---

[1] Brotherhood Of Maintenance Of Way Employes/I.B.T., Brotherhood of Railroad Signalmen, National Conference Of Firemen & Oilers/SEIU, and American Train Dispatchers Association are collectively referred to herein as the "labor organization defendants" and "PRLBC affiliates."

affiliates; (3) assertions that the PRLBC Agreement was unlawful, and (4) a refusal to bargain with the PRLBC.  Within two weeks subsequent to the filing of this lawsuit, collective bargaining negotiations between the labor organization defendants and Amtrak resumed.

Amtrak's complaint was prematurely filed.  Settled ripeness principles require its dismissal for lack of subject matter jurisdiction.  Amtrak's claim is not justiciable under Article III, Section 2 of the Constitution because the injury alleged by Amtrak when the complaint was filed was conjectural, hypothetical, remote, speculative, and abstract. Amtrak's claims are prudentially unripe for adjudication because they rest upon contingent future events that may not occur and collective bargaining negotiations between the parties that have not taken on a "fixed and final shape."

## STATEMENT OF FACTS

Since November 1, 1999, Amtrak and the four labor organization defendants have engaged in collective bargaining negotiations pursuant to the procedures of the RLA. Each of the labor organization defendants is a certified representative under Section 2 Ninth of the RLA, 45 U.S.C. § 152 Ninth, of a craft or class of Amtrak employees. (Complt. ¶s 4-11, 18-29)

All of the labor organization defendants were, pursuant to the procedures of Sections 5 and 6 of the RLA, 45 U.S.C. §§ 155, 156, in mediation with Amtrak under the supervision of the National Mediation Board ("NMB") on September 12, 2007.  Prior to September 12, 2007, each of the labor organization defendants had bargained with Amtrak over collective bargaining agreements on an individual organization basis. (Complt. ¶s 18-31)

After more than seven years of unsuccessful attempts to reach agreements with Amtrak, on August 23, 2007, the four labor organization defendants entered into an agreement among themselves forming the defendant PRLBC.   Among the principles underlying the PRLBC's formation was the belief that settlements of bargaining disputes with Amtrak "will be reached more expeditiously and successfully if the organizations coordinate their bargaining efforts." (Complt. Ex. A, PRLBC Agmt., p.1)  This belief was based upon recent experience in collective bargaining disputes involving the rail freight industry and the Metro-North Commuter Railroad, in which multi-union bargaining resulted in voluntary agreements being executed in 2007. (Complt. Ex. B; Def. Exs. 1-4, Decls. ¶ 2)

Each of the labor organizations designated the PRLBC as its representative to act on its behalf in bargaining with Amtrak.   In two letters dated September 12, 2007, the PRLBC advised Amtrak and the NMB of its formation, its appointment as bargaining representative by the four labor organization defendants, and the designation of Roland P. Wilder, Jr., Esq. as PRLBC spokesperson.   These letters enclosed the PRLBC Agreement, and the letter to Amtrak also enclosed a proposal suggesting terms for the resolution of issues "common" to the four PRLBC affiliated labor organizations.   The letter to the NMB requested the NMB to consolidate the mediation proceedings of the PRLBC affiliates.  (Complt. ¶s 33, 34 and Exs. B, C)

In a September 14, 2007 letter to the NMB, Amtrak objected to the PRLBC's request that the mediation proceedings of the four PRLBC affiliates be consolidated. Amtrak's letter acknowledged that Amtrak had no objection to the exercise of the PRLBC affiliates' rights to coordinate their bargaining efforts and to designate the

PRLBC as the bargaining representative for each affiliate. Amtrak's letter stated, however, that it had not consented to multi-union bargaining by the PRLBC affiliates and believed multi-union bargaining would be ineffective and inefficient because of different work rule proposals Amtrak had made to the PRLBC affiliates. (Complt. ¶ 35 and Ex. E)

At a September 17, 2007 NMB mediation session, Amtrak advised it was "preserving" its rights to challenge the efforts of the PRLBC affiliates to bargain jointly and reiterated its belief that multi-union bargaining would not be helpful in resolving Amtrak's work rule proposals. PRLBC spokesperson Wilder articulated the rationale for the common economic proposals previously sent to Amtrak by the PRLBC on September 12, 2007, and expressed willingness to negotiate about and requested a list of whatever work rule proposals Amtrak was then interested in pursuing. (Complt. ¶ 36; Def. Exs. 1-4, Decls. ¶ 3)

Amtrak did not respond to the PRLBC's economic proposals and invitation to discuss Amtrak's work rule proposals. (Complt. Ex. G, p. 3; Def. Exs. 1-4, Decls. ¶ 4) Instead, on October 11, 2007, Amtrak's counsel sent a letter to the NMB advising that Amtrak viewed the PRLBC Agreement as unlawful because it is "intended to prevent individual agreements between Amtrak and" the PRLBC affiliates. (Complt. ¶ 37 and Ex. F) Amtrak's counsel's letter requested the NMB not to release the parties from mediation pursuant to RLA Section 5 First(b), 45 U.S.C. § 155 First(b)[2], until the PRLBC affiliates void the PRLBC Agreement. (*Ibid.*)

---

[2] RLA Section 5 First(b), 45 U.S.C. § 155 First(b), provides in pertinent part:

If [NMB] efforts to bring about an amicable settlement through mediation shall be unsuccessful, the said Board shall at once endeavor as its final required action …to

In response, in an October 12, 2007 letter, PRLBC spokesperson Wilder informed the NMB that, *inter alia*, "[t]he notion that the PRLBC agreement is somehow preventing one or more of our affiliates from making an individual agreement with Amtrak is false as a matter of fact," "there is no merit to the suggestion that the PRLBC Agreement precludes discussion of work rules unique to individual organizations," and that Amtrak's counsel's request that the NMB retain its mediation jurisdiction to pressure the labor organizations to abandon their Agreement was a request that the NMB violate its RLA obligations. (Complt. ¶ 38 and Ex. G)

Nothing in the PRLBC Agreement is or was ever "intended to prevent individual agreements between Amtrak and" a PRLBC affiliate or preclude negotiations concerning an individual agreement between Amtrak and a PRLBC affiliate.  Each of the PRLBC affiliates has always intended that it will enter into a separate agreement with Amtrak. The PRLBC has never refused to engage in negotiations with Amtrak concerning an individual agreement with a PRLBC affiliate.  Nothing in the Agreement is or was ever intended to disable or preclude PRLBC affiliates from bargaining over work rule proposals unique to an affiliate.  The PRLBC has never refused to bargain regarding any work rule proposal of Amtrak or any other matter and has never conditioned its

---

induce the parties to submit their controversy to arbitration, in accordance with the provisions of this Act.

If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under section 10 of this Act [45 U.S.C. § 160], no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

negotiations upon Amtrak's agreement to multi-union bargaining.  The PRLBC has never

discussed the issue of multi-union bargaining with Amtrak. (Def. Exs. 1-4, Decls. ¶s 5-7)

The NMB did not rule on PRLBC's request to consolidate the mediation dockets

of its affiliates. On October 18, 2007, pursuant to RLA Section 5 First(b), the NMB

offered arbitration to the parties. (Complt. 40)   On October 19, 2007, Amtrak filed this

lawsuit.

On October 25, 2007, the PRLBC affiliates executed Addendum No. 1 to the

PRLBC Agreement and so advised Amtrak and the NMB. (Def. Ex. 5; Def. Exs. 1-4,

Decls. ¶ 8)  The Addendum states:

> [A]ll of the organizations affiliated with the Passenger Rail Labor
> Bargaining Coalition ("hereby Coalition") hereby deliver their following
> written consents contemplated by Paragraph II-5 of the Coalition
> Agreement dated August 23, 2007:
>
> Notwithstanding anything to the contrary in the Coalition Agreement,
> express written consent is hereby given to each and every Coalition
> affiliate to individually negotiate with Amtrak and conclude, in its sole
> discretion, a separate agreement with Amtrak resolving any and all
> collective bargaining issues, including common issues, during the thirty
> (30) day cooling off period following the National Mediation Board's
> notice, given pursuant to 45 U.S.C. § 155, First(b), that its mediatory
> efforts involving the Coalition affiliate and Amtrak have failed. (Def. Ex.
> 5)

The NMB's offer of arbitration was not accepted by the parties and, on October

31, 2007, pursuant to RLA Section 5 First(b), the NMB notified Amtrak, the PRLBC

affiliates and five other labor organizations unaffiliated with PRLBC that NMB

mediation efforts had been unsuccessful, and the thirty (30) day cooling off period of

RLA Section 5 First(b) commenced. (Def. Exs. 1-4, Decls. ¶ 9 and Def. Ex. 6)  At the

end of the thirty (30) day cooling off period, the parties will be free to engage in self-

help, including strikes and a lockout, unless a Presidential Emergency Board is

established pursuant to RLA Section 10, 45 U.S.C. § 160. (Complt. ¶ 41)  Based on historical practice, the PRLBC affiliates anticipate a Presidential Emergency Board will be convened at or before the end of the thirty (30) day cooling off period if agreements with Amtrak are not reached. (Def. Exs. 1-4, Decls. ¶ 11)

Beginning on November 5, 2007, pursuant to Addendum 1 to the PRLBC Agreement and with the assistance of the NMB, each of the PRLBC affiliates has attempted to engage Amtrak in collective bargaining negotiations. (Def. Exs. 1-4, Decls. ¶ 10)

Amtrak does not allege that the four labor organization defendants may not coordinate their bargaining with Amtrak.  Nor does Amtrak challenge the right of each labor organization defendant under RLA Section 2 Third, 45 U.S.C. § 152 Third, to designate the PRLBC as its representative for collective bargaining with Amtrak. Instead, Amtrak alleges the internal "voting" provisions of the PRLBC Agreement disables each of the PRLBC affiliates from making a proposal, entering into an agreement or ratifying an agreement with Amtrak "without the consent of the three other labor organizations." (Complt. ¶ 46)  It does not, however, allege that such consent could not be given or has ever been refused.  As noted above, the labor organizations can, under the terms of the PRLBC Agreement, give their consent to PRLBC affiliates to individually make proposals, enter into and ratify agreements with Amtrak and have in fact done so for all PRLBC affiliates. (Def. Ex. 5)

Amtrak alleges that the "intent and the effect" of the voting provisions is to disable PRLBC affiliates from bargaining individually over Amtrak's work rule proposals. (Complt. ¶ 48)  No facts or PRLBC Agreement provisions are alleged to

support this naked conclusion.  Nothing in the PRLBC Agreement either explicitly or implicitly so provides and defendants deny they intended their Agreement to have this meaning or effect.  At the single negotiation session held prior to the filing of this lawsuit, PRLBC spokesperson Wilder explicitly invited Amtrak to engage in negotiations with PRLBC concerning its work rule proposals. Prior to filing this lawsuit, Amtrak never responded to this invitation. (Def. Exs. 1-4, Decls. ¶s 3, 4, 6)

Amtrak's First Cause of Action claims that the PRLBC affiliates have violated their duty to "exert every reasonable effort to make and maintain agreements … and to settle all disputes" prescribed by RLA Section 2 First, 45 U.S.C. 152 First, by entering into the PRLBC Agreement and "effectively refusing to bargain with Amtrak concerning Amtrak's work rule proposals specific to each labor organization." (Complt. ¶ 53)  Amtrak's Second Cause of Action alleges that the PRLBC affiliates have violated RLA Section 2 First and other RLA provisions by entering into the Agreement "and insisting on negotiating with Amtrak as a multi-union coalition based on that Agreement." (Complt. ¶ 58)

The labor organization defendants have not individually nor collectively ever refused to bargain with Amtrak at any time on any issue and have never "insisted" or conditioned negotiations upon an Amtrak agreement to bargain on a multi-union basis. (Def. Exs. 1-4, ¶s 6, 7)  As noted above, beginning on November 5, 2007, each of the PRLBC affiliates, through its designated representative, has attempted to engage Amtrak in collective bargaining negotiations. (Def. Exs. 1-4, Decls. ¶ 10)

The alleged harm to Amtrak is the same in both causes of action: "Amtrak will suffer irreparable harm if the Defendants continue to implement the PRLBC Agreement

and insist on bargaining on a multi-union basis during the 30-day cooling off period, and then engage in a strike or other self-help that will result in an interruption of passenger rail service on Amtrak's system." (Complt. ¶ 50)  None of the PRLBC affiliates has, since the formation of the PRLBC, threatened Amtrak with or taken any steps to implement a strike or any other self-help measure at the end of the thirty (30) day cooling off period or "insisted" to impasse that Amtrak bargain on a multi-union basis. (Def. Exs. 1-4, Decls. ¶s 7, 11)  The appointment of a Presidential Emergency Board prior to the end of the thirty (30) day cooling off period of RLA Section 155 First(b) would preclude self-help at the end of the period.  RLA Section 10, 45 U.S.C. § 160.

## ARGUMENT

### I.  Standard of review applicable to Defendants' Rule 12(b)(1) motion

Where, as here, defendants' Rule 12(b)(1) motion challenges plaintiffs' factual allegations related to the court's jurisdiction on ripeness grounds, plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence, and the "'court may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the plaintiff and disputed by the defendant.  Instead, the Court must go beyond the pleadings and resolve any disputed issues of fact the resolution of which is necessary to a ruling upon the motion to dismiss.'" *Citizen Electronics Co., Ltd. v. Osram GMBH,* 377 F. Supp.2d 149, 152 (D.D.C. 2005), quoting *Phoenix Consulting Inc. v. Republic of Angola,* 216 F.3d 36, 40 (D.C. Cir. 2000); *Erby v. United States,* 424 F. Supp.2d 180, 183 (D.D.C. 2006).

## II. Ripeness principles

"'[R]ipeness is a justiciability doctrine" that is "'drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'" *Devia v. Nuclear Regulatory Commission*, 492 F.3d 421, 424 (D.C. Cir. 2007) ("*Devia*"), quoting *Nat'l Park Hospitality Ass'n v. Dep't of the Interior,* 538 U.S. 803, 807-08 (2003) (quoting *Reno v. Catholic Soc. Servs.,* 509 U.S. 43, 57 n.18 (1993)). The constitutional ripeness requirement is that a plaintiff's "injury in fact be 'certainly impending.'" *Nat'l Treasury Employees Union v. United States,* 101 F.3d 1423, 1437 (D.C. Cir. 1996), quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158  (1990)  This means that "[t]he injury alleged cannot be 'conjectural' or 'hypothetical,' 'remote,' 'speculative,' or 'abstract.'" *Nat'l Treasury Employees Union*, 101 F.3d at 1437 (internal citations omitted).

"The prudential aspect of ripeness [is] where a court balances 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" *Id.,* quoting *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967); *Devia*, 492 F.3d at 424.  "Under the first prong, the court considers 'whether the issue is purely legal, whether consideration of the issue would benefit from a more concrete setting, and whether the [defendants' action] is sufficiently final…. Under the second prong, one asks 'whether postponement will impose an undue burden on the claimant or would benefit the court.'" *Isenbarger v. Farmer*, 463 F. Supp.2d 13, 19 (D.D.C. 2006), quoting *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Engineers,* 440 F.3d 459, 464 (D.C. Cir. 2006).

The "usually unspoken element of the rationale" of the prudential ripeness inquiry "is this: 'If we do not decide [the claim] now, we may never need to. Not only does this rationale protect the expenditure of judicial resources, but it comports with our theoretical role as the governmental branch of last resort. Article III courts should not make decisions unless they have to.'" *Devia,* 492 F.3d at 424, quoting *Nat'l Treasury Employees Union,* 101 F.3d at 1431. The "oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast v. Cohen,* 392 U.S. 83, 96 (1968), quoting C. Wright, Federal Courts 34 (1963).

For this reason, "[e]ven if a challenged action is final and the issues purely legal, a case is [still] not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated or may not occur at all.'" *Isenbarger v. Farmer*, 463 F. Supp.2d at 19, quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)); *Devia,* 492 F.3d at 425. In *Devia,* 492 F.3d at 424-25, our Circuit Court, quoting *McInnis-Misenor v. Maine Med. Ctr.,* 319 F.3d 63, 72 (1st Cir. 2003), explained:

> Even though the legal issues may be clear, a case may still not be fit for review: [T]he question of fitness does not pivot solely on whether a court is capable of resolving a claim intelligently, but also involves an assessment of whether it is appropriate for the court to undertake the task. Federal courts cannot--and should not--spend their scarce resources on what amounts to shadow boxing. Thus, if a plaintiff's claim, though predominantly legal in character, depends on future events that may never come to pass, or that may not occur in the form forecasted, then the claim is unripe.

 Amtrak's request for relief under the Declaratory Judgment Act, 28 U.S.C. 2201, which requires an "actual controversy," does not change the analysis. The Act provides a remedy, not a jurisdictional grant. "The term 'actual' is … one of emphasis, and not indicative of a different standard from Article III as to what qualifies as a controversy."

*Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941); *Federal Express Corp. v. Air Line Pilots Assoc.,* 67 F.3d 961, 964 (D.C. Cir. 1995)  In order to meet this threshold requirement, there must be "a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 963-64*,* quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241 (1937).  "To be 'ripe for determination' under the Declaratory Judgment Act, a 'disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Danville Tobacco Association v. Freeman,* 351 F.2d 832, 834 (D.C. Cir. 1965), quoting *Public Service Comm'n. of Utah v. Wycoff Co.,* 344 U.S. 237, 244 (1952).

In RLA cases, our Court of Appeals has consistently stressed the requirement that disagreements in collective bargaining negotiations take on a "fixed and final shape" before becoming ripe for determination by a court "because collective bargaining, rather than litigation, is the favored mode of settling labor disputes, … the passage of time, rather than exacerbating the problem, frequently cools tempers, and allows amicable resolution of disputes[,] [and] [l]abor disputes frequently inspire robust negotiations, where some degree of 'posturing' by the parties is inevitable." *Federal Express Corp. v. Air Line Pilots Ass'n.,* 67 F.3d at 964 (carrier's declaratory judgment claim that carrier can alter *status quo* prior to first collective bargaining agreement unripe where specific changes had not been made); *Atlas Air, Inc. v. Air Line Pilots Ass'n.*, 232 F.3d 218, 227 (D.C. Cir. 2000) (same).  Even after years of litigation, after vacating a district court's

12

judgment and remanding for further proceedings in a RLA case concerning whether subordinate bodies of a labor organization should be compelled to negotiate a collective bargaining agreement with a multi-employer bargaining agent, our Court of Appeals, on its own initiative, stated: "On remand, we would remind the parties that in actions for declaratory judgment invoking the RLA, jurisdiction of the court is limited by general declaratory judgment law, and that a dispute appropriate for resolution under the declaratory judgment act 'must not be nebulous or contingent, but must have taken on fixed and final shape.'" *Gen. Comm. of Adjustment v. Burlington N. & Santa Fe Ry.*, 295 F.3d 1337, 1341 (D.C. Cir. 2002), *cert. denied,* 537 U.S. 1191 (2003).

**III. Amtrak's Alleged Injury Is Not Constitutionally Ripe Because It is Not "Certainly Impending."**

Amtrak has alleged that "if" the PRLBC affiliates continue to implement the alleged unlawful voting provisions "and insist on bargaining on a multi-union basis during the 30-day cooling off period, and then engage in a strike or other self-help that will result in an interruption of passenger rail service on Amtrak's system," Amtrak will suffer irreparable harm. (Complt. ¶ 50, emphasis added)  All of these alleged happenings were, at a minimum, conjectural, hypothetical, and speculative when the complaint was filed.  The actual facts are to the contrary.

The PRLBC affiliates have implemented a provision of their Agreement that provides that they all may individually bargain and conclude an agreement with Amtrak on any and all issues during the thirty (30) day cooling off period "[n]otwithstanding anything to the contrary in the Coalition Agreement."  The PRLBC has never, at any time, "insisted" that Amtrak consent to multi-union bargaining as a condition of negotiations.   And the PRLBC affiliates have no present intention to engage in a strike at

the end of the thirty (30) day cooling off period and, in fact, anticipate that a Presidential Emergency Board will be convened prior to the end of the thirty (30) day cooling off period if agreements are not reached, which would then continue to preclude self-help. RLA Section 10, 45 U.S.C. 160.   Amtrak's alleged injury is not "certainly impending." Its claims are not justiciable under Article III, Section 2 of the Constitution.

In *Southern Railway Co. v. Brotherhood of Locomotive Firemen and Enginemen,* 223 F. Supp. 296, 301, 302, 304  (M.D. Ga. 1962), *aff'd.,* 324 F.2d 503 (5th Cir 1963), the court held unripe and not justiciable the plaintiff carriers' claims that defendant labor organizations were making unlawful demands and proposals in ongoing negotiations, including the demand that the carriers should consent to multi-union bargaining sessions. The court noted that the carriers "are at liberty to decline such requests or to enter upon bargaining discussions without prejudice to their position" (223 F. Supp. at 304), and "courts should think hard and long before undertaking to pass upon all differences of opinion which arise in bargaining conferences between representatives of management and labor." (*Id.* at 307)   Because no strike vote had been taken and no other facts indicated a strike was imminent, the court held that "[t]here is considerable uncertainty as to whether any harm will ever result to plaintiffs. Speculative anticipation of a future course of action or mere forecasts or predictions of irreparable injury will not suffice." (*Id.* at 305).  The same is true here.

**IV.  Amtrak's claims are prudentially unripe for adjudication**

**A.  The issues are unfit for judicial resolution at this time.**

To oppose this motion, Amtrak has to claim, as does its complaint, that simply by entering into the PRLBC Agreement and without more, the PRLBC affiliates have

14

violated RLA Section 2 First's requirement that they "exert every reasonable effort to make and maintain agreements … and to settle all disputes."  The fact that this act alone is not sufficiently "fixed and final" to enable this Court to make a reasoned decision is illustrated by *Air Line Pilots Ass'n. v. United Air Lines, Inc.*, 802 F.2d 886 (7th Cir. 1986), *cert. denied*, 480 U.S. 946 (1987) ("*ALPA v. United*").

In *ALPA v. United*, to secure the support of United's flight attendants' union ("AFA") for a strike by United pilots, ALPA entered into an agreement with AFA not to conclude a back to work agreement unless and until AFA reached an acceptable back to work agreement with United.  ALPA informed United during their negotiations of its agreement with AFA. *Id.* at 900-03.  United argued, *inter alia,* that "by conditioning the ratification of its own agreement upon AFA reaching a satisfactory agreement, ALPA violated its [RLA Section 2 First] duty to bargain by insisting on a permissive subject of bargaining" which defeated ALPA's claim for injunctive relief by reason of Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108.[3] *Id.* at 903.  The Seventh Circuit held that ALPA did not violate its RLA Section 2 First duty to bargain simply by entering into the agreement because it never carried out its agreement to impasse:

> …ALPA, though stating that it would not ratify its agreement until an agreement was reached with AFA, never carried out its threat. Indeed, AFA released ALPA from its obligation prior to the time ALPA was faced with the prospect of ratifying a new agreement with United. Moreover, ALPA never conditioned its negotiations upon United's reaching a satisfactory back-to-work agreement with AFA; rather, ALPA initially stated only that it would not ratify a tentative agreement once one was

---

[3] Section 8 of the Norris-LaGuardia Act, 29 U.S.C. § 108 provides that "no restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration."

reached prior to the time that AFA reached an accord with United. Since ratification of the agreement between ALPA and United was never hindered by ALPA's promise to AFA, we find that ALPA's actions with respect to this matter were not in violation of its duty to bargain in good faith.

*Id.* at 903.

In this case, Amtrak relies upon the same argument as United, *i.e.,* that the PRLBC affiliates have entered into an unlawful agreement, "insisted" that Amtrak bargain on a multi-union basis, and this demand is a permissive subject of bargaining. But here, as in *ALPA v. United*, the Court need not delve into the issue of mandatory versus permissive subjects of bargaining because the PRLBC affiliates may never utilize the voting procedures of the PRLBC Agreement, or the voting procedures will not hinder the ratification of an agreement between Amtrak and a PRLBC affiliate. The PRLBC affiliates have already in fact, pursuant to the terms of their agreement, released each other from the promises made in the agreement concerning individual negotiation and ratification of agreements on all issues with Amtrak during the thirty (30) day cooling off period. Like ALPA in *ALPA v. United*, the PRLBC affiliates are not now and never have conditioned negotiations with Amtrak on the demand that Amtrak agree to negotiate on a multi-union basis.

Until the alleged unlawful voting provisions of the PRLBC Agreement are implemented to block a ratification vote sought by an affiliate on a tentative agreement or the voting procedures somehow interfere with the making of an agreement between Amtrak and a PRLBC affiliate, the acts of the PRLBC affiliates are insufficiently final to be ripe for adjudication and "consideration of the issue would benefit from a more concrete setting." Put in other ways, this case is not ripe for adjudication because it rests

upon "'contingent future events that may not occur as anticipated or may not occur at all,'" *Devia,* 492 F.3d at 425, and *Isenbarger v. Farmer*, 463 F. Supp. at 19, both quoting *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580-81 (1985)), and the negotiations among PRLBC affiliates and Amtrak have not "taken on fixed and final shape." *Gen. Comm. of Adjustment v. Burlington N. & Santa Fe Ry.*, 295 F.3d at 1341; *Federal Express Corp. v. Air Line Pilots Assoc.,* 67 F.3d at 964; *Atlas Air, Inc. v. Air Line Pilots Assoc.*, 232 F.3d 218, 227.

**B. Postponing a decision will cause Amtrak no harm and will benefit the Court.**

The parties are currently engaged in collective bargaining negotiations.  If no agreement is reached in November, 2007 during the thirty (30) day cooling off period, it is likely a Presidential Emergency Board will be convened to recommend a settlement of the parties' dispute as in past disputes between the parties.  No strike is imminent. Amtrak can participate in negotiations while reserving its rights to pursue the claims alleged in this action. *Burlington Northern & Santa Fe Ry. Co. v. United Transportation Union,* 290 F. Supp.2d 138, 151 (D.D.C. 2003) ("Clearly, the wiser course for GO-386 would have been to participate in the national bargaining negotiating process with the understanding that its participation would not prejudice its rights regarding the matters at issue in these actions, which is the course taken by UTU.").

As the discussion of *ALPA v. United* above demonstrates and as the D.C. Circuit Court of Appeals has repeatedly held in RLA cases, claims concerning collective bargaining negotiations are not ripe for adjudication until the dispute takes on "a fixed and final shape."  The dispute in this case is nowhere near final and fixed.  No emergency

situation is imminent.  The parties are negotiating.  The Court should avoid an advisory opinion based upon a set of facts that were hypothetical when the case was filed and are changing daily.  Clearly, the Court will be able to make a better informed decision when the dust settles, assuming *arguendo* a decision will ever have to be made.

## CONCLUSION

For the foregoing reasons, this case should be dismissed for lack of subject matter jurisdiction.

Dated: November 19, 2007        Respectfully submitted,


/s/ Roland P. Wilder
Roland P. Wilder, Jr. (DC Bar No. 69609)
Stefan P. Sutich (DC Bar No. 493451)
BAPTISTE & WILDER, P.C.
1150 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20036
Tel:  (202) 223-0723
Fax: (202) 223-9677

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 19, 2007 a true and correct copy of Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction, together with supporting statement of points and authorities and exhibits, was served on counsel for plaintiff via the Court's ECF System.

/s/ Roland P. Wilder, Jr.
Roland P. Wilder

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION) | |
| Plaintiff, | ) |
| v. , | ) Civil Action No. |
| | ) 1:07-01888-HHK |
| BROTHERHOOD OF MAINTENANCE OF WAY | ) |
| EMPLOYES, *etc., et. al.* | ) |
| Defendants. | ) |

**DEFENDANTS' EXHIBIT NO. 1**

**DECLARATION OF W. DAN PICKETT**

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  <u>Civil Action No.</u><br>1:07-01888-HHK |

## DECLARATION OF W. DAN PICKETT

In accordance with 28 U.S.C. § 1746, I do hereby affirm and declare, under penalty of perjury, that:

1. I am the President of the Brotherhood of Railroad Signalmen ("BRS") and Chairman of the Passenger Rail Labor Bargaining Coalition ("PRLBC"). I am more than eighteen (18) years of age and have personal knowledge of the facts stated herein.

2. One of the reasons BRS supported the formation of the PRLBC was its belief that settlements of bargaining disputes with National Railroad Passenger Corporation ("Amtrak") will be reached more expeditiously and successfully if the labor organizations representing Amtrak employees coordinate their bargaining efforts. This belief was based upon recent experience in collective bargaining disputes involving the rail freight industry and the Metro-North Commuter Railroad, in which multi-union bargaining resulted in voluntary agreements being executed in 2007.

3. At a September 17, 2007 National Mediation Board ("NMB") mediation session, Amtrak advised it was preserving its rights to challenge the efforts of the PRLBC affiliates to bargain jointly and reiterated its belief that multi-union bargaining would not

1

be helpful in resolving Amtrak's work rule proposals. PRLBC spokesperson Roland P. Wilder, Jr. articulated the rationale for common economic proposals previously sent to Amtrak by the PRLBC on September 12, 2007, and expressed willingness to negotiate about and requested a list of whatever work rule proposals Amtrak was then interested in pursuing.

4. Prior to October 19, 2007, Amtrak did not respond to the PRLBC's economic proposals and invitation to discuss Amtrak's work rule proposals.

5. Nothing in the PRLBC Agreement is or was ever intended by BRS to prevent individual agreements between Amtrak and a PRLBC affiliate or preclude negotiations concerning an individual agreement between Amtrak and a PRLBC affiliate. BRS has always intended that it will enter into a separate agreement with Amtrak. The PRLBC has never refused to engage in negotiations with Amtrak concerning an individual agreement with a PRLBC affiliate.

6. Nothing in the PRLBC Agreement is or was ever intended by BRS to disable or preclude PRLBC affiliates from bargaining over work rule proposals unique to an affiliate. The PRLBC has never refused to bargain regarding any work rule proposal of Amtrak or any other matter.

7. The PRLBC has never conditioned its negotiations upon Amtrak's agreement to multi-union bargaining. The PRLBC has never discussed the issue of multi-union bargaining with Amtrak.

8. On October 25, 2007, the PRLBC affiliates executed Addendum No. 1 to the PRLBC Agreement and so advised Amtrak and the NMB. A true and correct copy of Addendum 1 to the PRLBC Agreement is attached hereto and identified as Exhibit 5.

9.   The NMB's offer of arbitration was not accepted by the parties and, on October 31, 2007, pursuant to RLA Section 5 First(b), the NMB notified Amtrak, the PRLBC affiliates and five other labor organizations unaffiliated with PRLBC that NMB mediation efforts had been unsuccessful, and the thirty (30) day cooling off period of RLA Section 5 First(b) commenced.  A true and correct copy of the letter received by BRS is attached hereto and included within Exhibit 6.

10.   Beginning on November 5, 2007, pursuant to Addendum I to the PRLBC Agreement and with the assistance of the NMB, each of the PRLBC affiliates has attempted to engage Amtrak in collective bargaining negotiations.

11.   Neither the PRLBC nor BRS has, since the formation of the PRLBC, threatened Amtrak with or taken any steps to implement a strike or any other self-help measure at the end of the thirty (30) day cooling off period.  Based on historical practice, BRS anticipates a Presidential Emergency Board will be convened at or before the end of the thirty (30) day cooling off period if agreements with Amtrak are not reached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2007

W. Dan Pickett

**UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA**

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BROTHERHOOD OF MAINTENANCE OF WAY | ) |
| EMPLOYES, *etc., et. al.* | ) |
| | ) |
| Defendants. | ) |
| | ) |

Civil Action No.
1:07-01888-HHK

**DEFENDANTS' EXHIBIT 2**

**DECLARATION OF GEORGE J. FRANCISCO, Jr.**

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. |
| | ) 1:07-01888-HHK |
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.* | ) |
| Defendants. | ) |

## DECLARATION OF GEORGE J. FRANCISCO, Jr.

In accordance with 28 U.S.C. § 1746, I do hereby affirm and declare, under penalty of perjury, that:

1. I am the President of the National Conference of Firemen and Oilers, SEIU ("NCF&O"). I am more than eighteen (18) years of age and have personal knowledge of the facts stated herein.

2. One of the reasons NCF&O supported the formation of the Passenger Rail Labor Bargaining Coalition ("PRLBC") was its belief that settlements of bargaining disputes with National Railroad Passenger Corporation ("Amtrak") will be reached more expeditiously and successfully if the labor organizations representing Amtrak employees coordinate their bargaining efforts. This belief was based upon recent experience in collective bargaining disputes involving the rail freight industry and the Metro-North Commuter Railroad, in which multi-union bargaining resulted in voluntary agreements being executed in 2007.

3. At a September 17, 2007 National Mediation Board ("NMB") mediation session, Amtrak advised it was preserving its rights to challenge the efforts of the PRLBC

1

affiliates to bargain jointly and reiterated its belief that multi-union bargaining would not be helpful in resolving Amtrak's work rule proposals. PRLBC spokesperson Roland P. Wilder, Jr. articulated the rationale for common economic proposals previously sent to Amtrak by the PRLBC on September 12, 2007, and expressed willingness to negotiate about and requested a list of whatever work rule proposals Amtrak was then interested in pursuing.

4. Prior to October 19, 2007, Amtrak did not respond to the PRLBC's economic proposals and invitation to discuss Amtrak's work rule proposals.

5. Nothing in the PRLBC Agreement is or was ever intended by NCF&O to prevent individual agreements between Amtrak and a PRLBC affiliate or preclude negotiations concerning an individual agreement between Amtrak and a PRLBC affiliate. NCF&O has always intended that it will enter into a separate agreement with Amtrak. The PRLBC has never refused to engage in negotiations with Amtrak concerning an individual agreement with a PRLBC affiliate.

6. Nothing in the PRLBC Agreement is or was ever intended by NCF&O to disable or preclude PRLBC affiliates from bargaining over work rule proposals unique to an affiliate. The PRLBC has never refused to bargain regarding any work rule proposal of Amtrak or any other matter.

7. The PRLBC has never conditioned its negotiations upon Amtrak's agreement to multi-union bargaining. The PRLBC has never discussed the issue of multi-union bargaining with Amtrak.

8. On October 25, 2007, the PRLBC affiliates executed Addendum No. 1 to the PRLBC Agreement and so advised Amtrak and the NMB. A true and correct copy of Addendum 1 to the PRLBC Agreement is attached hereto and identified as Exhibit 5.

9. The NMB's offer of arbitration was not accepted by the parties and, on October 31, 2007, pursuant to RLA Section 5 First(b), the NMB notified Amtrak, the PRLBC affiliates and five other labor organizations unaffiliated with PRLBC that NMB mediation efforts had been unsuccessful, and the thirty (30) day cooling off period of RLA Section 5 First(b) commenced. A true and correct copy of the letter received by NCF&O is attached hereto and included within Exhibit 6.

10. Beginning on November 5, 2007, pursuant to Addendum I to the PRLBC Agreement and with the assistance of the NMB, each of the PRLBC affiliates has attempted to engage Amtrak in collective bargaining negotiations.

11. Neither the PRLBC nor NCF&O has, since the formation of the PRLBC, threatened Amtrak with or taken any steps to implement a strike or any other self-help measure at the end of the thirty (30) day cooling off period. Based on historical practice, NCF&O anticipates a Presidential Emergency Board will be convened at or before the end of the thirty (30) day cooling off period if agreements with Amtrak are not reached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November /4, 2007

George J. Francisco, Jr.

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.* | ) |
|  | ) |
| Defendants. | ) |

Civil Action No.
1:07-01888-HHK

## DEFENDANTS' EXHIBIT NO. 3

## DECLARATION OF F. LEO McCANN

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No.
1:07-01888-HHK

### DECLARATION OF F. LEO McCANN

In accordance with 28 U.S.C. § 1746, I do hereby affirm and declare, under penalty of perjury, that:

1. I am the President of the American Train Dispatchers Association ("ATDA"). I am more than eighteen (18) years of age and have personal knowledge of the facts stated herein.

2. One of the reasons ATDA supported the formation of the Passenger Rail Labor Bargaining Coalition ("PRLBC") was its belief that settlements of bargaining disputes with National Railroad Passenger Corporation ("Amtrak") will be reached more expeditiously and successfully if the labor organizations representing Amtrak employees coordinate their bargaining efforts. This belief was based upon recent experience in collective bargaining disputes involving the rail freight industry and the Metro-North Commuter Railroad, in which multi-union bargaining resulted in voluntary agreements being executed in 2007.

3. At a September 17, 2007 National Mediation Board ("NMB") mediation session, Amtrak advised it was preserving its rights to challenge the efforts of the PRLBC

1

affiliates to bargain jointly and reiterated its belief that multi-union bargaining would not be helpful in resolving Amtrak's work rule proposals. PRLBC spokesperson Roland P. Wilder, Jr. articulated the rationale for common economic proposals previously sent to Amtrak by the PRLBC on September 12, 2007, and expressed willingness to negotiate about and requested a list of whatever work rule proposals Amtrak was then interested in pursuing.

4. Prior to October 19, 2007, Amtrak did not respond to the PRLBC's economic proposals and invitation to discuss Amtrak's work rule proposals.

5. Nothing in the PRLBC Agreement is or was ever intended by ATDA to prevent individual agreements between Amtrak and a PRLBC affiliate or preclude negotiations concerning an individual agreement between Amtrak and a PRLBC affiliate. ATDA has always intended that it will enter into a separate agreement with Amtrak. The PRLBC has never refused to engage in negotiations with Amtrak concerning an individual agreement with a PRLBC affiliate.

6. Nothing in the PRLBC Agreement is or was ever intended by ATDA to disable or preclude PRLBC affiliates from bargaining over work rule proposals unique to an affiliate. The PRLBC has never refused to bargain regarding any work rule proposal of Amtrak or any other matter.

7. The PRLBC has never conditioned its negotiations upon Amtrak's agreement to multi-union bargaining. The PRLBC has never discussed the issue of multi-union bargaining with Amtrak.

8. On October 25, 2007, the PRLBC affiliates executed Addendum No. 1 to the PRLBC Agreement and so advised Amtrak and the NMB. A true and correct copy of Addendum 1 to the PRLBC Agreement is attached hereto and identified as Exhibit 5.

9.  The NMB's offer of arbitration was not accepted by the parties and, on October 31, 2007, pursuant to RLA Section 5 First(b), the NMB notified Amtrak, the PRLBC affiliates and five other labor organizations unaffiliated with PRLBC that NMB mediation efforts had been unsuccessful, and the thirty (30) day cooling off period of RLA Section 5 First(b) commenced.  A true and correct copy of the letter received by ATDA is attached hereto and included within Exhibit 6.

10.  Beginning on November 5, 2007, pursuant to Addendum I to the PRLBC Agreement and with the assistance of the NMB, each of the PRLBC affiliates has attempted to engage Amtrak in collective bargaining negotiations.

11.  Neither the PRLBC nor ATDA has, since the formation of the PRLBC, threatened Amtrak with or taken any steps to implement a strike or any other self-help measure at the end of the thirty (30) day cooling off period.  Based on historical practice, ATDA anticipates a Presidential Emergency Board will be convened at or before the end of the thirty (30) day cooling off period if agreements with Amtrak are not reached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November _15_, 2007

F. Leo McCann

3

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| BROTHERHOOD OF MAINTENANCE OF WAY | ) |
| EMPLOYES, *etc., et. al.* | ) |
|  | ) |
| Defendants. | ) |
|  | ) |

Civil Action No.
1:07-01888-HHK

## DEFENDANTS' EXHIBIT NO. 4

## DECLARATION OF FREDDIE N. SIMPSON

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION)<br><br>Plaintiff, )<br><br>v. )<br><br>BROTHERHOOD OF MAINTENANCE OF WAY )<br>EMPLOYES, *etc., et. al.* )<br><br>Defendants. ) | Civil Action No.<br>1:07-01888-HHK |

## DECLARATION OF FREDDIE N. SIMPSON

In accordance with 28 U.S.C. § 1746, I do hereby affirm and declare, under penalty of perjury, that:

1.  I am the President of the Brotherhood of Maintenance Of Way Employes Division, I.B.T. ("BMWED"). I am more than eighteen (18) years of age and have personal knowledge of the facts stated herein.

2.  One of the reasons BMWED supported the formation of the Passenger Rail Labor Bargaining Coalition ("PRLBC") was its belief that settlements of bargaining disputes with National Railroad Passenger Corporation ("Amtrak") will be reached more expeditiously and successfully if the labor organizations representing Amtrak employees coordinate their bargaining efforts. This belief was based upon recent experience in collective bargaining disputes involving the rail freight industry and the Metro-North Commuter Railroad, in which multi-union bargaining resulted in voluntary agreements being executed in 2007.

3.  I was informed that at a September 17, 2007 National Mediation Board ("NMB") mediation session, Amtrak advised it was preserving its rights to challenge the

efforts of the PRLBC affiliates to bargain jointly and reiterated its belief that multi-union bargaining would not be helpful in resolving Amtrak's work rule proposals. I was further informed that PRLBC spokesperson Roland P. Wilder, Jr. articulated the rationale for common economic proposals previously sent to Amtrak by the PRLBC on September 12, 2007, and expressed willingness to negotiate about and requested a list of whatever work rule proposals Amtrak was then interested in pursuing.

4. Prior to October 19, 2007, Amtrak did not respond to the PRLBC's economic proposals and invitation to discuss Amtrak's work rule proposals.

5. Nothing in the PRLBC Agreement is or was ever intended by BMWED to prevent individual agreements between Amtrak and a PRLBC affiliate or preclude negotiations concerning an individual agreement between Amtrak and a PRLBC affiliate. BMWED has always intended that it will enter into a separate agreement with Amtrak. The PRLBC has never refused to engage in negotiations with Amtrak concerning an individual agreement with a PRLBC affiliate.

6. Nothing in the PRLBC Agreement is or was ever intended by BMWED to disable or preclude PRLBC affiliates from bargaining over work rule proposals unique to an affiliate. The PRLBC has never refused to bargain regarding any work rule proposal of Amtrak or any other matter.

7. The PRLBC has never conditioned its negotiations upon Amtrak's agreement to multi-union bargaining. The PRLBC has never discussed the issue of multi-union bargaining with Amtrak.

8. On October 25, 2007, the PRLBC affiliates executed Addendum No. 1 to the PRLBC Agreement and so advised Amtrak and the NMB. A true and correct copy of Addendum 1 to the PRLBC Agreement is attached hereto and identified as Exhibit 5.

9.   The NMB's offer of arbitration was not accepted by the parties and, on October 31, 2007, pursuant to RLA Section 5 First(b), the NMB notified Amtrak, the PRLBC affiliates and five other labor organizations unaffiliated with PRLBC that NMB mediation efforts had been unsuccessful, and the thirty (30) day cooling off period of RLA Section 5 First(b) commenced.   A true and correct copy of the letter received by BMWED is attached hereto and included within Exhibit 6.

10.   Beginning on November 5, 2007, pursuant to Addendum I to the PRLBC Agreement and with the assistance of the NMB, each of the PRLBC affiliates has attempted to engage Amtrak in collective bargaining negotiations.

11.   Neither the PRLBC nor BMWED has, since the formation of the PRLBC, threatened Amtrak with or taken any steps to implement a strike or any other self-help measure at the end of the thirty (30) day cooling off period.   Based on historical practice, BMWED anticipates a Presidential Emergency Board will be convened at or before the end of the thirty (30) day cooling off period if agreements with Amtrak are not reached.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 14, 2007

Freddie N. Simpson

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.* | ) |
| | ) |
| Defendants. | ) |

Civil Action No.
1:07-01888-HHK

## DEFENDANTS' EXHIBIT NO. 5

## ADDENDUM NO. 1
## PASSENGER RAIL LABOR BARGAINING COALITION AGREEMENT

**ADDENDUM NO. 1**

**PASSENGER RAIL LABOR BARGAINING COALITION AGREEMENT**

By the signatures of their authorized representatives below, all of the organizations affiliated with the Passenger Rail Labor Bargaining Coalition ("hereby Coalition") hereby deliver their following written consents contemplated by Paragraph II-5 of the Coalition Agreement dated August 23, 2007:

Notwithstanding anything to the contrary in the Coalition Agreement, express written consent is hereby given to each and every Coalition affiliate to individually negotiate with Amtrak and conclude, in its sole discretion, a separate agreement with Amtrak resolving any and all collective bargaining issues, including common issues, during the thirty (30) day cooling off period following the National Mediation Board's notice, given pursuant to 45 U.S.C. § 155, First(b), that its mediatory efforts involving the Coalition affiliate and Amtrak have failed.

Signed this 25th day of October, 2007 in Washington, D.C.


American Train Dispatchers Association

Brotherhood of Maintenance of Way
Employes

Brotherhood of Railroad Signalmen

National Conference of Firemen and
Oilers, SEIU

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION<br><br>Plaintiff,<br><br>v.<br><br>BROTHERHOOD OF MAINTENANCE OF WAY EMPLOYES, *etc., et. al.*<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>Civil Action No.</u>
1:07-01888-HHK

## DEFENDANTS' EXHIBIT NO. 6

## OCTOBER 31, 2007 NATIONAL MEDIATION BOARD LETTERS



# National Mediation Board
### WASHINGTON, D.C. 20572

(202) 692–5000

October 31, 2007

<u>VIA FACSIMILE & U.S. MAIL</u>

Mr. F. L. McCann
International President
American Train Dispatchers Assoc
1370 Ontario Street, Suite 1040
Cleveland, OH 44113-1736

Mr. J. M. Bress
Vice President, Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

**Re:   NMB Case Nos. A-13340, _Amtrak & ATDA_**

Gentlemen:

In answer to our letter addressed jointly to your respective Carrier and Organization dated October 18, 2007, we have been advised by facsimile letter dated October 25, 2007, from F. L McCann, International President, American Train Dispatchers Association, that the Organization has declined, in writing, to arbitrate the question in the above-captioned case. A copy of this letter is attached.

Your attention is therefore directed to the last clause in Section 5, First (b) of the Railway Labor Act, as amended, reading as follows:

> If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under Section 10 of this Act, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

It is the judgment of our Board that all practical methods provided in the Railway Labor Act for our adjusting the dispute have been exhausted, without effecting a settlement.

Page 2
Case No. A-13340
October 31, 2007

In these circumstances, notice is hereby served on behalf of the Board that its services (except as provided in Section 5, Third and in Section 10 of the Act) have been terminated this day under the provisions of the Railway Labor Act. Accordingly, unless the parties subsequently settle this dispute, or an emergency board is established, nonviolent self-help would be available commencing **12:01 a.m. EST, Saturday, December 1, 2007.**

By direction of the NATIONAL MEDIATION BOARD.

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

Enclosure

cc:    Rick Palmer, Director, Labor Relations, Amtrak
       Charles Woodcock, Dir., Labor Relations, Amtrak
       Roland Wilder, Esq.
       Board Members
       Zachery Jones, Senior Mediator, NMB
       Richard Hanusz, Mediator, NMB

10/25/2007  16:11    2022239677    BAPTISTE & WILDER PC    PAGE 03/04



# PASSENGER RAIL LABOR BARGAINING COALITION

**W. Dan Pickett**
*Chairman*

**American Train
Dispatchers Association**
F.L. McCann
*President*

**Brotherhood of
Maintenance of Way
Employes/IBT**
Freddie N. Simpson
*President*

**Brotherhood of
Railroad Signalmen**
W. Dan Pickett
*President*

**International Conference of
Firemen and Oilers, SEIU**
George J. Francisco, Jr.
*President*

October 25, 2007

Larry Gibbons, Director
Office of Mediation Services
National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005-7011

    **Re:  *Amtrak NMB Case Nos. A-13340 (ATDA),
         A-13080 (BMWED), A-13185 (BRS), A-13370
         (NCFO)***

Dear Mr. Gibbons:

    The foregoing organizations, collectively and individually, reject the National Mediation Board's proffers in the above captioned cases.

Respectfully submitted,

American Train Dispatchers Association

Brotherhood of Maintenance of Way
Employes

Brotherhood of Railroad Signalmen

National Conference of Firemen and
Oilers, SEIU

cc:   Joseph M. Bress
      Thomas E. Reinert, Jr.

917 Shenandoah Shores Road • Front Royal, VA 22630-6418 • 540.622-6522 Tel • 540.622-6532 Fax



# NATIONAL MEDIATION BOARD
WASHINGTON, D.C. 20572

(202) 692–5000

October 31, 2007

<u>VIA FACSIMILE & U.S. MAIL</u>

Mr. Freddie Simpson
President
Brotherhood of Maintenance of Way Employees
20300 Civic Center Drive, Suite 320
Southfield, MI 48076

Mr. J. M. Bress
Vice President Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

**Re:   NMB Case No. A-13080, _Amtrak & BMWE_**

Gentlemen:

In answer to our letter addressed jointly to your respective Carrier and Organization dated October 18, 2007, we have been advised by facsimile letter dated October 25, 2007, from Freddie Simpson, President, Brotherhood of Maintenance of Way Employees, that the Organization has declined, in writing, to arbitrate the question in the above-captioned case.  A copy of this letter is attached.

Your attention is therefore directed to the last clause in Section 5, First (b) of the Railway Labor Act, as amended, reading as follows:

If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under Section 10 of this Act, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

It is the judgment of our Board that all practical methods provided in the Railway Labor Act for our adjusting the dispute have been exhausted, without effecting a settlement.

Page 2
Case No. A-13080
October 31, 2007

       In these circumstances, notice is hereby served on behalf of the Board that
its services (except as provided in Section 5, Third and in Section 10 of the Act)
have been terminated this day under the provisions of the Railway Labor Act.
Accordingly, unless the parties subsequently settle this dispute, or an emergency
board is established, nonviolent self-help would be available commencing
**12:01 a.m. EST, Saturday, December 1, 2007.**

       By direction of the NATIONAL MEDIATION BOARD.

                                           Lawrence E. Gibbons
                                           Director, Office of Mediation Services

LEG/vhr

Enclosure

cc:     Rick Palmer, Director, Labor Relations, AMTRAK
        Charles Woodcock, Director, Labor Relations, AMTRAK
        Roland Wilder, Esq.
        Board Members
        Patricia Sims, Senior Mediator, NMB
        A. Michael Tosi, Mediator, NMB

10/25/2007  16:11    2022239677         BAPTISTE & WILDER PC              PAGE 03/04



# PASSENGER RAIL LABOR BARGAINING COALITION

**W. Dan Pickett**
*Chairman*

October 25, 2007

Larry Gibbons, Director
Office of Mediation Services
National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005-7011

**American Train Dispatchers Association**
F.L. McCann
*President*

> **Re:   *Amtrak NMB Case Nos. A-13340 (ATDA),
> A-13080 (BMWED), A-13185 (BRS), A-13370
> (NCFO)***

**Brotherhood of Maintenance of Way Employees/IBT**
Freddie N. Simpson
*President*

Dear Mr. Gibbons:

The foregoing organizations, collectively and individually, reject the National Mediation Board's proffers in the above captioned cases.

**Brotherhood of Railroad Signalmen**
W. Dan Pickett
*President*

Respectfully submitted,

**International Conference of Firemen and Oilers, SEIU**
George J. Francisco, Jr.
*President*

American Train Dispatchers Association

Brotherhood of Maintenance of Way
Employes

Brotherhood of Railroad Signalmen

National Conference of Firemen and
Oilers, SEIU

cc:    Joseph M. Bress
Thomas E. Reinert, Jr.

917 Shenandoah Shores Road • Front Royal, VA 22630-8418 • 540.622.6522 Tel • 540.622.6532 Fax



# NATIONAL MEDIATION BOARD
## WASHINGTON, D.C. 20572

(202) 692–5000                    October 31, 2007

<u>VIA FACSIMILE & U.S. MAIL</u>

Mr. W. Dan Pickett
President
Brotherhood of Railroad Signalmen
917 Shenadoah Shores Road
Front Royal, VA 22630-6418


Mr. J. M. Bress
Vice President, Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

**Re:    NMB Case No. A-13185, _Amtrak & BRS_**

Gentlemen:

In answer to our letter addressed jointly to your respective Carrier and Organization dated October 18, 2007, we have been advised by facsimile letter dated October 25, 2007, from W. Dan Pickett, President, Brotherhood of Railroad Signalmen, that the Organization has declined, in writing, to arbitrate the question in the above-captioned case.  A copy of this letter is attached.

Your attention is therefore directed to the last clause in Section 5, First (b) of the Railway Labor Act, as amended, reading as follows:

If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under Section 10 of this Act, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.


It is the judgment of our Board that all practical methods provided in the Railway Labor Act for our adjusting the dispute have been exhausted, without effecting a settlement.

OCT-31-2007 16:38 FROM:NATIONAL MEDIATION B 202 692 5084        TO:2022239677        P.3/5

Page 2
Case No. A-13185
October 31, 2007

In these circumstances, notice is hereby served on behalf of the Board that its services (except as provided in Section 5, Third and in Section 10 of the Act) have been terminated this day under the provisions of the Railway Labor Act. Accordingly, unless the parties subsequently settle this dispute, or an emergency board is established, nonviolent self-help would be available commencing **12:01 a.m. EST, Saturday, December 1, 2007.**

By direction of the NATIONAL MEDIATION BOARD.

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

Enclosure

cc:    Rick Palmer, Director, Labor Relations, AMTRAK
       Charles Woodcock, Dir., Labor Relations, AMTRAK
       Roland Wilder, Esq.
       Board Members
       Patricia Sims, Senior Mediator, NMB
       A. Michael Tosi, Mediator, NMB

OCT-31-2007 16:38 FROM:NATIONAL MEDIATION B 202 692 5084        TO:2022239677        P.4/5

10/25/2007  16:11    2022239677        BAPTISTE & WILDER PC        PAGE 03/04



# PASSENGER RAIL LABOR BARGAINING COALITION

**W. Dan Pickett**
*Chairman*

**American Train
Dispatchers Association**
F.L. McCann
*President*

**Brotherhood of
Maintenance of Way
Employes/IBT**
Freddie N. Simpson
*President*

**Brotherhood of
Railroad Signalmen**
W. Dan Pickett
*President*

**International Conference of
Firemen and Oilers, SEIU**
George J. Francisco, Jr.
*President*

October 25, 2007

Larry Gibbons, Director
Office of Mediation Services
National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005-7011

> **Re:** *Amtrak NMB Case Nos. A-13340 (ATDA),
> A-13080 (BMWED), A-13185 (BRS), A-13370
> (NCFO)*

Dear Mr. Gibbons:

The foregoing organizations, collectively and individually, reject the National Mediation Board's proffers in the above captioned cases.

Respectfully submitted,

*[signature]*

American Train Dispatchers Association

*[signature]*

Brotherhood of Maintenance of Way
Employes

*[signature]*

Brotherhood of Railroad Signalmen

*[signature]*

National Conference of Firemen and
Oilers, SEIU

cc:  Joseph M. Bress
Thomas E. Reinert, Jr.

917 Shenandoah Shores Road • Front Royal, VA 22630-6418 • 540.622.6522 Tel • 540.622.6532 Fax



# NATIONAL MEDIATION BOARD
### WASHINGTON, D.C. 20572

(202) 692–5000

October 31, 2007

<u>VIA FACSIMILE & U.S. MAIL</u>

Mr. G. J. Francisco, Jr.
President, NCFO/SEIU
1023 15th Street, NW 10th Floor
Washington, DC 20005

Mr. J. M. Bress
Vice President, Labor Relations
National Railroad Passenger Corporation
60 Massachusetts Avenue, NE
Washington, DC 20002

**Re:    NMB Case Nos. A-13370, _Amtrak & NCFO_**

Gentlemen:

In answer to our letter addressed jointly to your respective Carrier and Organization dated October 18, 2007, we have been advised by facsimile letter dated October 25, 2007, from G. J. Francisco, Jr., President, NCFO/SEIU that the Organization has declined, in writing, to arbitrate the question in the above-captioned case. A copy of this letter is attached.

Your attention is therefore directed to the last clause in Section 5, First (b) of the Railway Labor Act, as amended, reading as follows:

> If arbitration at the request of the Board shall be refused by one or both parties, the Board shall at once notify both parties in writing that its mediatory efforts have failed and for thirty days thereafter, unless in the intervening period the parties agree to arbitration, or an emergency board shall be created under Section 10 of this Act, no change shall be made in the rates of pay, rules, or working conditions or established practices in effect prior to the time the dispute arose.

It is the judgment of our Board that all practical methods provided in the Railway Labor Act for our adjusting the dispute have been exhausted, without effecting a settlement.

Page 2
Case No. A-13370
October 31, 2007

     In these circumstances, notice is hereby served on behalf of the Board that its services (except as provided in Section 5, Third and in Section 10 of the Act) have been terminated this day under the provisions of the Railway Labor Act. Accordingly, unless the parties subsequently settle this dispute, or an emergency board is established, nonviolent self-help would be available commencing **12:01 a.m. EST, Saturday, December 1, 2007.**

     By direction of the NATIONAL MEDIATION BOARD.

Lawrence E. Gibbons
Director, Office of Mediation Services

LEG/vhr

Enclosure

cc:    Rick Palmer, Director, Labor Relations, Amtrak
       Charles Woodcock, Dir., Labor Relations, Amtrak
       Roland Wilder, Esq.
       Board Members
       Zachery Jones, Senior Mediator, NMB
       Terri Brown, Mediator, NMB

10/25/2007  16:11    2022239677    BAPTISTE & WILDER PC    PAGE  03/04



# PASSENGER RAIL LABOR BARGAINING COALITION

**W. Dan Pickett**
*Chairman*

October 25, 2007

Larry Gibbons, Director
Office of Mediation Services
National Mediation Board
1301 K Street NW, Suite 250 East
Washington, DC 20005-7011

**American Train Dispatchers Association**
F.L. McCann
*President*

**Re:** *Amtrak NMB Case Nos. A-13340 (ATDA),*
*A-13080 (BMWED), A-13185 (BRS), A-13370*
*(NCFO)*

**Brotherhood of Maintenance of Way Employees/IBT**
Freddie N. Simpson
*President*

Dear Mr. Gibbons:

The foregoing organizations, collectively and individually, reject the National Mediation Board's proffers in the above captioned cases.

**Brotherhood of Railroad Signalmen**
W. Dan Pickett
*President*

Respectfully submitted,

**International Conference of Firemen and Oilers, SEIU**
George J. Francisco, Jr.
*President*

American Train Dispatchers Association

Brotherhood of Maintenance of Way
Employes

Brotherhood of Railroad Signalmen

National Conference of Firemen and
Oilers, SEIU

cc:    Joseph M. Bress
Thomas E. Reinert, Jr.

917 Shenandoah Shores Road • Front Royal, VA 22630-6418 • 540.622-6522 Tel • 540.622-6532 Fax

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 1:07-01888-HHK |
| BROTHERHOOD OF MAINTENANCE OF WAY ) | |
| EMPLOYES, A DIVISION OF THE TEAMSTERS ) | |
| RAIL CONFERENCE, INTERNATIONAL ) | |
| BROTHERHOOD OF TEAMSTERS; BROTHERHOOD ) | |
| OF RAILROAD SIGNALMEN; NATIONAL ) | |
| CONFERENCE OF FIREMEN & OILERS, SEIU; ) | |
| AMERICAN TRAIN DISPATCHERS ASSOCIATION; ) | |
| and PASSENGER RAIL LABOR BARGAINING ) | |
| COALITION ) | |
| ) | |
| Defendants. ) | |

## PROPOSED ORDER

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL RAILROAD PASSENGER CORPORATION) | |
| Plaintiff, | |
| v. | Civil Action No. |
| | 1:07-01888-HHK |
| BROTHERHOOD OF MAINTENANCE OF WAY | |
| EMPLOYES, A DIVISION OF THE TEAMSTERS | |
| RAIL CONFERENCE, INTERNATIONAL | |
| BROTHERHOOD OF TEAMSTERS; BROTHERHOOD | |
| OF RAILROAD SIGNALMEN; NATIONAL | |
| CONFERENCE OF FIREMEN & OILERS, SEIU; | |
| AMERICAN TRAIN DISPATCHERS ASSOCIATION; | |
| and PASSENGER RAIL LABOR BARGAINING | |
| COALITION | |
| Defendants. | |

## ORDER

Upon consideration of Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction, the arguments and affidavits filed in connection therewith, and the Court being fully advised,

It is hereby **ORDERED** that Defendants' Motion To Dismiss For Lack Of Subject Matter Jurisdiction is granted. This case is dismissed for lack of subject matter jurisdiction.

SIGNED this ____ day of _____, 200_.

_____
Hon. Henry H. Kennedy
United States District Court Judge

Attorneys entitled to notice:

Roland P. Wilder, Jr.
BAPTISTE & WILDER, P.C.
1150 Connecticut Ave., N.W.
Suite 500
Washington, D.C. 20036
Tel:  (202) 223-0723
Fax: (202) 223-9677

Thomas E. Reinert, Jr.
Jonathan C. Fritts
MORGAN LEWIS & BOCKIUS LLP
1111 Pennsylvania Ave., N.W.
Washington, DC 20004
Tel:  (202) 739-3000
Fax: (202) 739-3001

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 19, 2007 a true and correct copy of the

foregoing Proposed Order was served on counsel for plaintiff via the Court's ECF

System.


/s/ Roland P. Wilder, Jr.
Roland P. Wilder, Jr.